## SIMMONS et al. v. BROOKS.
### No. 6133.

United States Court of Appeals for the District of Columbia.

Argued May 14, 1934.

Decided June 11, 1934.

Henry I. Quinn, of Washington, D. C., for appellants.

John S. Barbour, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

MARTIN, Chief Justice.

An appeal from a judgment recovered in an action for damages for personal injuries sustained in an automobile accident.

In the declaration the plaintiff alleged that the defendants, Sol A. Simmons, Louis A. Simmons, and Abraham Simmons, were partners trading as the Simmons Motor Company; that in April, 1931, plaintiff was driving his automobile upon a public highway in Stafford county, Va.; that at the same time one J. F. Letcher was driving a car on the same road, slightly ahead of the plaintiff and going in the same direction; that plaintiff and Letcher were driving with due care; that as they were going up a grade which curved to their left a third automobile, belonging to the defendants, then and there operated by one J. R. Proctor as the agent and employee of the defendants, approached them from the opposite direction; that Proctor carelessly and negligently drove the defendants' car upon the wrong side of the road and at a high and dangerous rate of speed and collided first with the automobile operated by Letcher and immediately thereafter and in consequence thereof with the car operated by the plaintiff, whereby plaintiff suffered serious injuries for which he prayed judgment in damages.

The defendants for their plea admitted their ownership of the automobile driven by Proctor at the time of the accident and the fact that it was in collision with the automobile owned and operated by the plaintiff at the time and place alleged in the declaration; but denied that Proctor was operating the automobile at that time as their agent or employee or that he was then engaged in any manner in and about their business; and they averred that the collision was due solely to the negligence of Letcher in operating his automobile.

The case was tried to the jury and a verdict was returned for the plaintiff. A motion for a new trial was overruled by the court and judgment was entered for plaintiff upon the verdict. Whereupon the present appeal was taken.

It is disclosed by the record that the plaintiff introduced testimony in chief describing the collision of which he complained, together with the injuries which he suffered because of it; also testimony tending to show that the car driven by Proctor at the time of the collision had on it a dealers' tag for the year 1931, which had been issued to the defendants by the District of Columbia, and the regulations in force in the District at the time of the accident, which provided that such dealers' tags should not be transferred from one vehicle to another, nor be loaned to another by the person to whom issued, but should be applied to automobiles held by dealers for sale or demonstration only; and that under the laws of Virginia it was lawful for a car with the dealers' tags thereon to be operated over the highways of the state of Virginia without registering the vehicle under the laws of Virginia, but only when such machine was being used by the dealer or his agent for sale purposes. The plaintiff then rested.

■ At the conclusion of the plaintiff's evidence and at the close of all the evidence, the defendants moved for a directed verdict claiming that plaintiff had failed to introduce any proof that the car operated by Proctor which collided with the plaintiff's car was being used on business of the defendants or operated by him as agent or employee of defendants. The court overruled the motion to which the defendants excepted and this ruling is assigned as error by the appellants.

We think this assignment of error is not well taken. The fact that the car at the time of the accident was owned by the defendants who were dealers in automobiles and used cars and bore the dealers' license tags issued to them, which they could not lawfully use except upon automobiles held by them for sale or demonstration purposes, was sufficient to raise an inference that Proctor, the driver, was acting as an employee of the company with authority to demonstrate the car for them; and this presumption obtains until overthrown by credible testimony to the contrary. Callas v. Independent Taxi Owners Ass'n, 62 App. D. C. 212, 66 F.(2d) 192. But if the presumption be overcome by undisputed proof to the contrary, the question becomes one for the court, and not the jury. Curry v. Stevenson, 58 App. D. C. 162, 26 F.(2d) 534. If, however, the evidence is reasonably subject to contradictory interpretations, the question of liability of the defendants is for the jury. Tischler v. Steinholz, 99 N. J. Law, 149, 152, 122 A. 880.

■ The record discloses without contradiction that the defendants at the time in question were engaged in the business of selling automobiles including used cars; that they were in possession of dealers' license plates or tags, as alleged in the declaration, issued to them by the District of Columbia as identification tags necessary to their business as such dealers, which they were entitled to use upon automobiles for sale or demonstration purposes, but which they were not entitled to use for any other purpose. The defendants testified that they had never permitted the use of such license plates for any purpose except to be placed upon cars for sale or demonstration; that Harold Simmons was a relative of the partners but was not himself a partner; that he looked after the used car business, but had no authority to lend cars to anybody for pleasure purposes or private business purposes, nor to put the dealers' tags on cars except for strictly business purposes.

Harold Simmons as a witness for defendants testified that he had loaned Proctor the car in question to be used by him from Saturday night to Monday morning; that nothing was said by Proctor or himself at that time about demonstrating the car to anybody or attempting to sell it; that he was not a member of the firm, but was the "used car manager" for them and the partners knew nothing about this transaction between him and Proctor; that he simply took it upon himself to loan Proctor the car and that he had no authority to lend cars to people or to allow the use of dealers' tags to anyone except for sale or demonstrations; that the tags were intended to be used for demonstration purposes only; that he had loaned cars before to Proctor as a personal favor expecting that everything would be all right; that

he allowed him to use this car for the purpose of making a trip into Virginia to see his people and not for the purpose of demonstrating it or serving the Simmons Company. He denied that he had said to Proctor at the time he loaned him the car that if anything happened Proctor was to say that he was taking the car down there to demonstrate it, but he testified that he said to Proctor that in case he was stopped he was to say that the car was the property of the Simmons Motor Company. Witness testified that he was authorized to put dealers' tags on used cars for the purpose of demonstration only.

On cross-examination the witness was asked whether he recalled having a talk with Mr. Letcher at Quantico, and he answered that he did. He was then asked the following question: "On the occasion of that talk did you not say to Mr. Letcher that the insurance carried by your company, speaking of Simmons Motor Company, would not protect it against an injury to Mrs. Proctor—Mrs. Proctor had suffered an injury, I believe—but that his, Letcher's, insurance would, and that if Letcher would admit liability for that accident you would either make his car as good as new, or give him a new car?" The defendants objected to this question, but the court overruled the objection and witness, over exception, answered as follows: "No, sir; absolutely not. There was nothing along those lines ever said."

In rebuttal the witness Letcher testified as follows: "That on the day following the accident Harold Simmons, while talking to witness at Quantico, Virginia, said to witness that the insurance carried by the Simmons Motor Company would not protect it against Mrs. Proctor, but that witness' insurance would and if he would admit liability for the accident that they would either make his car as good as new or give him a new car and he declined that proposition."

The defendants also called Proctor, the driver of the car, as a witness who testified in substance that he was a barber by occupation, and was never employed by the Simmons Company in any capacity, and was never authorized by them to demonstrate or attempt to sell any of their cars; that he rented the car which he was driving at the time of the collision from Harold Simmons for the purpose of driving down into Virginia in order to visit some of his people and that the accident happened when he was returning on that trip. He testified that he was told by Harold Simmons that if he got into any trouble upon the trip he should say he was taking the car to demonstrate it as the agent of the Simmons Motor Company, but that in fact he did not take the car for such a purpose.

In rebuttal, however, the witness Oderman testified that he was at the scene of the accident immediately after the occurrence and told Proctor that his car was totally demolished, and that Proctor then said that he was awfully sorry because he had the car sold or was pretty sure he had the car sold to his cousin or brother-in-law or some of his relatives in Bowling Green, Va.; that Proctor said that he was not a dealer in cars but was a barber by trade and sold cars for the Simmons Motor Company week-ends and holidays; and that he was figuring on selling this particular car. The witness Curtis testified that he had a conversation with Proctor on the morning following the accident at the hospital in Fredericksburg, and that Proctor told him he was a barber by trade but between times sold used cars for the Simmons Motor Company and that he had this car to demonstrate to a cousin or brother-in-law at Bowling Green, Va.

Proctor denied these conversations when testifying in chief and the trial justice instructed the jury that this testimony was to be considered solely by way of impeachment. It is proper for this court likewise to consider it as such, and it reflects seriously upon the value of Proctor's testimony in chief.

The credibility of the testimony of the witness Harold Simmons may be considered in the light of a contradiction which occurs in course of his evidence. In his examination in chief he said: "I have never been in the company with Mr. L'Hommedieu when he spoke with Mr. Letcher. Us three have never been in the same room together. When he came to see Mr. L'Hommedieu I was not present. I was out of town." On cross-examination, however, he was asked "When you were on the stand before you were very positive, were you not, you were never present with Mr. L'Hommedieu and the sergeant?—A. Yes, sir, I was mistaken. Q. You went so far as to say you were not even in town?—A. Yes, sir, I was mistaken about that."

It is contended by appellants that it was error for the court to permit the plaintiff's counsel to ask the witness Harold Simmons the question above copied indicating that insurance was carried by the Simmons Motor Company and by Letcher. Appellants claim that the court should have withdrawn a juror and declared a mistrial because of the injection of the insurance feature into the case. We do not think that the court's ruling in

this particular was erroneous. It was plainly the purpose of the question to impeach the credibility of the witness Harold Simmons by showing his attempt to make a corrupt bargain with Letcher for the settlement of the damages resulting from the accident. It is true that this incidentally disclosed the fact that there was automobile insurance held by the parties, but that was an incidental and unavoidable result. It is not suggested that counsel for the plaintiff referred to this fact in their argument to the jury, nor does it appear that counsel for the defendants asked the court for a charge cautioning the jury to disregard the question of insurance when considering the testimony in relation to the facts in the case.

The trial justice in his charge to the jury instructed them with great care to consider the testimony relating to the conversations between the witnesses and other parties as admitted for the purpose of impeachment only and not as testimony relating to the questions at issue. We think that these instructions sufficiently informed the jury of their duties in that behalf. Capital Construction Co. v. Holtzman, 27 App. D. C. 125. Paxson v. Davis, 62 App. D. C. 146, 65 F. (2d) 492. The jury having seen and heard the witnesses evidently considered the legal presumption first mentioned to be more reliable than their testimony.

Upon the entire record we conclude that the trial court committed no error in the submission of the case to the jury and its judgment therefore is affirmed with costs.

HITZ, Associate Justice, took no part in the decision of this case.