**GASQUE et al. v. SAIDMAN.**

**SAME v. BODHOLDT.**

Nos. 317, 318.

Municipal Court of Appeals for the District of Columbia.

Nov. 7, 1945.

Walter M. Bastian and Joseph D. Bulman, both of Washington, D. C., for appellants.

Harry Saidman, of Washington, D. C., for appellee Saidman.

Karl Kindleberger, of Washington, D. C. for appellee Bodholdt.

Before CAYTON and HOOD, Associate Judges.

CAYTON, Associate Judge.

In the middle of the night the automobiles of the two plaintiffs which were parked at the curb were struck and damaged by a taxicab driven by one Blakely. The cab was titled in the name of appellant John R. Gasque, but had by him been transferred (by an instrument we shall later describe) to appellant Marshall L. Logan. Plaintiff Saidman sued Gasque, Logan and Blakely; but process was not served upon Blakely and so she went to trial against the other two defendants. Plaintiff Bodholdt sued only Gasque and Logan. The two cases were consolidated for trial, which was by jury, and a verdict resulted in favor of both plaintiffs against both defendants. Defendants appeal and present three principal questions for review.

1. *Liability of defendant Gasque*

The record title of the taxicab was in the name of Gasque. In his name also were the Office of Defense Transportation certificate, tire ration application, gas allotment papers and the Public Utilities Commission certificate. His name also appeared on the outside of the cab; and with his name there was the inscription "Equity No. 3," but as to this latter legend no explanation was offered. Those circumstances standing alone and unexplained would give rise to the presumption that the vehicle was at the time of the accident being operated

by an agent of Gasque and with his consent. That was the common law rule,[1] and it is clearly the rule today, under our Financial Responsibility Act. Code 1940, § 40—403; Rosenberg v. Murray, 73 App.D.C. 67, 116 F.2d 552; Mason v. Automobile Finance Co., 73 App.D.C. 284, 121 F.2d 32; Hiscox v. Jackson, 75 U.S.App.D.C. 293, 127 F.2d 160; Schwartzbach v. Thompson, D.C.Mun.App., 33 A.2d 624. The effect of the rule in this case was to shift the burden of proof and require Gasque to show that the car was not being operated with his consent.[2] He did more than that. He proved that he was not even the owner of the cab, within the meaning of the statute. He produced an agreement of conditional sale by which he had some months before transferred the taxicab to Logan for a consideration of $2,000. The agreement described Gasque as seller and Logan as buyer; it provided for weekly installment payments and reserved the legal title in Gasque pending payment of the full purchase price, with the usual right of repossession in case of default. The uncontradicted testimony was that Gasque did not know Blakely and had never given him permission to operate the taxicab. Thus the question is whether Gasque was entitled to a directed verdict.

He had divested himself of possession and entrusted it to Logan. By the written agreement he had retained title solely for the purpose of security. The other attributes of ownership such as possession, use, and control belonged to Logan;[3] Gasque had retained nothing more than a lien for the unpaid purchase price.[4] As we see it, liability against Gasque cannot be fashioned from the single fact that he owned the naked legal title to the taxicab. The matter has been settled in this jurisdiction by Mason v. Automobile Finance Co., 73 App. D.C. 284, 121 F.2d 32, 35, where it was held that one who is a mere chattel mortgagee is not an "owner," for the purposes of the statute. Said the Court, speaking through Justice Rutledge: "Something more than a lien on the property, * * * is necessary. In the absence of some definite statutory criterion of ownership, we think the purpose of the statute was to place the liability upon the person in a position immediately to allow or prevent the use of the vehicle and to do so by giving a lawful and effective consent or prohibition to its operation by others. The object was to control the giving of consent to irresponsible drivers by the one having that power *rather than to impose liability upon one having a naked legal title with no immediate right of control.*"[5] (Emphasis supplied).

The plaintiffs are not helped on this appeal by the fact that Gasque failed to have his name removed from the vehicle, or that the words "Equity No. 3" appeared with his name. There was no testimony that Gasque was operating a taxicab association or that Logan was a member of such association or that Logan was operating the vehicle for anyone except himself. Gasque had not sold or otherwise given Logan the right to use any particular trade name, insignia, or special coloring. The transaction was in all respects merely a transfer of the license and of the vehicle itself, with no additional benefits or privileges. In that respect this case is quite different from Callas v. Independent Taxi Owners' Ass'n, 62 App. D.C. 212, 66 F.2d 192, 193, where plaintiff's theory was that defendant was an incorporated association controlling a large fleet of cabs which it was allegedly operating through its members or associates; holding itself out as a public service corporation; and receiving from its members "thousands of dollars [of revenue] per month" for the use of its trade name, and for other membership privileges.

Nor was estoppel available to the plaintiffs. They were not passengers and had no contractual relationship either with Gasque or with Logan. As to them there had been no holding out of an "illusion of responsibility," and no deception or mis-

[1] Curry v. Stevenson, 58 App.D.C. 162, 26 F.2d 534; Simmons v. Brooks, 63 App. D.C. 293, 72 F.2d 86; Simon v. City Cab Co., 64 App.D.C. 364, 78 F.2d 506; Walsh v. Rosenberg, 65 App.D.C. 157, 81 F.2d 559.

[2] Casey v. United States, 276 U.S. 413, 48 S.Ct. 603, 72 L.Ed. 632; Rosenberg v. Murray, 73 App.D.C. 67, 116 F.2d 552.

[3] Logan was verbally instructed that he was not to permit anyone else to drive the cab; but this circumstance did not change the relationship of conditional vendor and vendee.

[4] Zweig v. Schwartz, D.C.Mun.App., 31 A.2d 857.

[5] There are cases in other jurisdictions which take the same view. See Lennon v. L. A. W. Acceptance Corporation, 48 R. I. 363, 138 A. 215; Trust Co. of Chicago v. Lewis Auto Sales, 306 Ill.App. 132, 28 N.E.2d 300; Coombes v. Letcher, 104 Mont. 371, 66 P.2d 769. Cf. Coonse v. Bechold, 71 Ind.App. 663, 125 N.E. 416.

representation. Compare Rhone v. Try Me Cab Co., 62 App.D.C. 201, 65 F.2d 834. Looking at all the circumstances, we are forced to conclude that Gasque had as a matter of law clearly overcome the statutory presumptions of ownership and agency, that there were no facts or inferences on which the jury could properly have based liability, and that it was error to have submitted the question of his liability to the jury.

We must also hold that it was error to submit the case to the jury on the theory of joint enterprise between Gasque and Logan, for there was no evidence to support such theory. To constitute joint enterprise there must be not only joint or community interest, but also an equal right, express or implied, to direct and control the management and movement of the car.[6] Here the right of control and management was in Logan, not Gasque.

## 2. Liability of defendant Logan

This defendant, as we have just said, was the person who had dominion and control of the taxicab. Whether it be said that he was buying or renting it, is of little or no consequence in determining his liability in this case. He was physically present in the back seat at the time of the collisions. He testified that he had been asleep, had not given Blakely permission to drive, and did not know that Blakely was driving until just before the crash. He said he had been in a restaurant and had consumed one beer with Blakely just before he got into the back seat, and that this was about 9:30 in the evening. But there was other testimony that "he had admitted he had been drinking a little heavy" and that Blakely, who had not been drinking as much, was driving. There was also testimony that Logan had gotten into the back seat at 2:00 in the morning and not at 9:30 in the evening, as he had claimed, and at a different place than the one he described. These differences and contradictions are typical of others in the testimony, which we need not detail here but which presented considerable doubt at to how the evening had been spent by Logan; whether he was drunk or sober or merely very tired; whether the ignition was locked or unlocked,[7] and if locked, how Blakely came into possession of the key; whether Logan knew that the car had been in motion for hours or was merely so much supine, backseat freight. These and the surrounding circumstances were all related to the ultimate question of whether Blakely was driving with Logan's consent, express or implied. In such a situation the facts were for the jury, not the judge, to decide.[8] So were the inferences to be drawn from the facts.[9]

## 3. Improper remarks of counsel

Another ground on which reversal is sought is that a statement made by counsel for plaintiff Bodholdt in his argument to the jury was inflammatory and prejudicial. This is what he said, following an objection to a part of his argument: "All right, we will withdraw that. I did not sue Blakely at all. I sue the two people that have got an interest in this car, either equitably or legally. I say they cannot throw a smoke screen here, nor can they hide behind Blakely. *He has not got anything, and neither one of these people could get any money out of Blakely—*" (Emphasis supplied by us).

The defense attorney objected and demanded a mistrial, which was denied. And the trial judge immediately told the jury to disregard the question as to whether or not Blakely had any money, that there was no testimony as to his financial responsibility and that the jury were to disregard the statement of counsel.

We do not think the statement of counsel was prejudicial. True, there was no evidence to support it and the statement should not have been made. We have previously said that "statements not supported by admitted evidence tend to mislead the jury and are not to be commended." "However," we said, "not every improper argument necessarily requires a reversal."[10] That, we think, is the situation in this case. The argument cannot be called a proper one; but as we read the record we cannot

6 Stearns v. Lindow, 63 App.D.C. 134, 70 F.2d 738.

7 As to liability of one leaving a car unlocked, see Ross v. Hartman, 78 U.S.App. D.C. 217, 139 F.2d 14; Schaff v. Claxton, 79 U.S.App.D.C. 207, 144 F.2d 532.

8 Hiscox v. Jackson, 75 U.S.App.D.C. 293, 127 F.2d 160.

9 Canada Dry Ginger Ale Co. v. Jochum, D.C.Mun.App., 43 A.2d 42, and cases there cited.

10 Meyer v. Capital Transit Co., D.C. Mun.App., 32 A.2d 392, 393.

see how it could possibly have influenced the jury,[11] especially in view of the instructions of the trial judge which were prompt and clear.

Judgments reversed, with instructions to award a new trial as to appellant John R. Gasque; and affirmed as to appellant Marshall L. Logan.

[11] See McFarland v. United States, App. D.C. 150 F.2d 593.