**Frederick O. GAITHER, Appellant,**

**v.**

**Charles R. MYERS and American Motorist Insurance Co., a corporation, Appellees.**

**No. 21247.**

United States Court of Appeals District of Columbia Circuit.

Argued April 16, 1968.

Decided Oct. 10, 1968.

Mr. John J. O'Neill, Jr., Washington, D. C., for appellant. Mr. Francis X. Quinn, Washington, D. C., also entered an appearance for appellant.

Mr. Ben Cotten, Washington, D. C., with whom Mr. Albert D. Brault, Washington, D. C., was on the brief, for appellees.

Before BURGER, TAMM and LEVENTHAL, Circuit Judges.

LEVENTHAL, Circuit Judge:

At about 11:25 p. m. on June 22, 1960, plaintiff Myers, a resident of Maryland, was driving on a Maryland road, about five miles from the District of Columbia line, when a speeding automobile, returning to the District, rapidly approached him from the rear, collided with the left rear portion of his car, veered across the highway onto the left shoulder of the road and then back across the highway in front of Mr. Myers, and came to rest in a ditch on the right side of the road about 960 feet from the point of impact. Minutes later the police arrived and upon investigation found that the carelessly driven car had been abandoned by its driver. The ownership of the abandoned auto was traced through its District of Columbia license tags to defendant Gaither. The trial court granted defendant's motion for a directed verdict. The D.C. Court of Appeals reversed and remanded for a new trial.[1] We affirm its order, although we do not agree with all of its opinion.

I. Basis for liability in common law presumption that automobile was operated by defendant's agent and lack of consistent and conclusive proof to the contrary.

The trial court ruled that there was no evidence to support plaintiff's claim that Gaither was driving the car and that a jury could only speculate and conjecture to conclude that he was. The court rejected the plaintiff's apparent position that Gaither and his witness, Mr. Hendricks, were deliberately or through loss of recollection mistaken about the alibi that Hendricks was visiting Gaither at his apartment at the time of the accident. Also rejected was the claim that an agent of Gaither's was driving, the court stating that there was no evidence "whatsoever" to sustain such a finding.[2]

1. In part I of its opinion of reversal, the D.C. Court of Appeals held that the case was governed by the District of Columbia Financial Responsibility Law, 40 D.C.Code § 424 (1967), on the ground that this statute created an evidentiary presumption applicable to cases brought in our courts. The statute provides, in pertinent part:

Whenever any motor vehicle * * * shall be operated upon the public highways of the District of Columbia by any person other than the owner, with the consent of the owner, express or implied, the operator thereof shall in case of accident, be deemed to be the agent of the owner of such motor vehicle, and the proof of the ownership of said motor vehicle shall be prima facie evidence that such person operated said motor vehicle with the consent of the owner.

As the D.C. Court of Appeals pointed out, this statute establishes a rebuttable presumption that in case of an accident the owner of an automobile has given consent to the driver; and this presumption will support a jury verdict and judgment for the plaintiff unless the defendant demonstrates nonconsent by "uncontradicted" and "conclusive" evidence.[3]

The court found that the "proof offered by the owner [Gaither] contained inconsistencies and self-contradictions raising doubt as to * * * [his] cred-

---

1. Myers v. Gaither, 232 A.2d 577 (D.C. C.A.1967).

2. The trial court did not mention that plaintiff was entitled to a presumption that the defendant or his agent was driving. It did rule that the District

of Columbia Financial Responsibility Law, *see infra*, was inapplicable to Maryland accident.

3. Hiscox v. Jackson, 75 U.S.App.D.C. 293, 127 F.2d 160 (1942); Rosenberg v. Murray, 73 App.D.C. 67, 116 F.2d 552 (1940).

ibility or that of his witnesses." [4] We agree that the testimony by and on behalf of defendant Gaither is fairly characterized as so inconsistent and contradictory as to put the credibility of his version of the events in issue.

We have difficulty with that part of the opinion of the D.C. Court of Appeals which indicates that Gaither's liability could be predicated on the presumption in the last clause of the statute, making ownership prima facie evidence of consent. In our view the last clause, containing the presumption of consent, was intended for application in conjunction with the first clause of the statute, which provides a new substantive rule of law that in case a car is operated with consent of the owner, the operator shall be deemed to be the agent of the owner.[5] But the first clause is by its terms applicable only as to a motor vehicle "operated upon the public highways of the District of Columbia" [6] and that makes this statute inapplicable here, where at the time of injury the car was being operated in Maryland.[7]

2. The conclusion that the D.C. Financial Responsibility Law does not apply, however, does not settle the matter. The rule at common law, both in Maryland [8] and the District of Columbia [9] is that there is a rebuttable presumption that an automobile involved in an accident was being operated at that time by the owner, either personally or through an agent. As to the area not covered by the District's Financial Responsibility Law, plaintiff is entitled to the common law presumptions. And the common law of both jurisdictions directs that plaintiff's case be submitted to the jury, unless evidence rebutting the common law presumption is both "uncontradicted" and "conclusive." [10]

It will be noted that, although the common law and the statute are different as to the nature of the presumption,[11] they are alike in the requirement as to the kind of proof that must be adduced to overcome the presumption and permit a directed verdict.[12] We see no basis for upsetting the conclusion of the D.C. Court of Appeals that Gaither's

4. 232 A.2d at 581.

5. Rosenberg v. Murray, 73 App.D.C. 67, 116 F.2d 552 (1940); Forrester v. Jerman, 67 App.D.C. 167, 90 F.2d 412 (1937). The owner may only escape liability by proving nonconsent. See Jones v. Halun, 111 U.S.App.D.C. 340, 296 F.2d 597 (1961); Hudson v. Lazarus, 95 U.S.App.D.C. 16, 217 F.2d 344 (1954). In the absence of statute, consent is a mere ingredient of, and does not establish the agency. See, e. g., Forrester v. Jerman, supra; Curry v. Stevenson, 58 App.D.C. 162, 26 F.2d 534 (1928); State, Use of Shipley v. Walker, 230 Md. 133, 186 A.2d 472 (1962); Miller v. Shegogue, 221 Md. 292, 157 A.2d 272 (1960).

6. See Knight v. Handley Motor Co., 198 A.2d 747, 750 (D.C.C.A.1964).

7. We need not therefore consider whether the court was correct in its analysis that in conflicts of laws cases questions relating to presumptions are matters of procedure governed by the law of the forum. See RESTATEMENT, CONFLICT OF LAWS § 595 (1934); 3 J. BEALE, CONFLICT OF LAWS § 595.2, at 1610–1611 (1935). Whether a presumption of the forum state on the one hand or some other state on the other is applicable in a particular case requires careful analysis of the particular issue. See RESTATEMENT SECOND, CONFLICT OF LAWS §§ 122, 133–135 (Proposed Official Draft, May 1967); Cook, "Substance" and "Procedure" in the Conflict of Laws, 42 YALE L.J. 333 (1933).

8. E. g., Grier v. Rosenberg, 213 Md. 248, 131 A.2d 737 (1957).

9. E. g., Walsh v. Rosenberg, 65 App.D.C. 157, 81 F.2d 559 (1935); Curry v. Stevenson, 58 App.D.C. 162, 26 F.2d 534 (1928).
In addition to grafting a territorial limitation on the presumption, the statute alters the common law rule only by converting the rebuttable presumption of an agency into a conclusive one where a single ingredient of actual agency, consent, is present.

10. E. g., Simmons v. Brooks, 63 App. D.C. 293, 72 F.2d 86 (1934); Curry v. Stevenson, 58 App.D.C. 162, 26 F.2d 534 (1928); House v. Jerosimich, 246 Md. 747, 230 A.2d 282 (1967); Hoerr v. Hanline, 219 Md. 413, 149 A.2d 378 (1959); Grier v. Rosenberg, 213 Md. 248, 131 A.2d 737 (1957).

11. See notes 5 and 9, supra.

12. See cases cited note 3, supra.

testimony, that he was not driving his car—either personally or through an agent—at the time of the accident, was not so consistent and conclusive as to support a directed verdict.

II. Basis for liability in proof that defendant left his keys in the car, in violation of a D.C. motor vehicle regulation.

3. Plaintiff urges an alternative theory that defendant's liability may be premised on the alleged fact that Gaither unlawfully left his keys in his car. We agree that there is support in the evidence for this allegation and that such conduct provides an independent basis for liability.

■■ Article XIV, § 98, of the District of Columbia Traffic and Motor Vehicle Regulations provides:

No person driving, or in charge of a motor vehicle shall permit it to stand unattended without first stopping the engine, locking the ignition, removing the key, and effectively setting the brake thereon and, when standing upon any grade, turning the front wheels to the curb or side of the highway.

The trial court ruled that this regulation was irrelevant to the liability question since the evidence showed that the ignition had been locked and the key removed (apparently, from the ignition but not from the tailgate of this stationwagon). In Part II of its opinion, the Court of Appeals analyzed the purpose of the regulation. It concluded, correctly in our view, that this regulation is violated even when the driver removes the key from the ignition if he does not remove the key completely from the car. Since the major purpose of the statute is to prevent strangers from tampering with or stealing the car and injuring others, a key left in the tailgate, being in plain view, presents a temptation and danger comparable to, if not greater than, that of a key left in the ignition. Thus, it would undercut the statutory purpose to interpret "removing the key" as meaning removing it only from the ignition and not from the car door, trunk, tailgate, or other places in plain view.[13]

4. The remainder of the opinion of the D.C. Court of Appeals was directed to consideration of whether liability could be premised on appellant's negligence in leaving the keys in his parked and unattended car. Under the law of the District of Columbia, if appellant's stolen car caused the damage in the District, instead of in Maryland, it is clear that, under the facts of our case, appellant's action would render him liable to the victim under a theory of negligence per se. Ross v. Hartman, 78 U.S.App. D.C. 217, 139 F.2d 14, 158 A.L.R. 1370 (1943), cert. denied, 321 U.S. 790, 64 S. Ct. 790, 88 L.Ed. 1080 (1944).[14] In the Ross case the defendant left his keys in his truck after parking it in a public alley. A thief drove the truck away and within two hours ran down the plaintiff. In discussing the former District of Columbia regulation on locking the ignition, the court said:

Since it is a safety measure, its violation was negligence. This negligence created the hazard and thereby brought about the harm which the ordinance was intended to prevent. It was therefore a legal or "proximate" cause of the harm. Both negligence and causation are too clear in this case, we think, for submission to a jury.

The fact that the intermeddler's conduct was itself a proximate cause of

13. It would not be inappropriate if the regulation were amended to add another jog to those who read it.

14. For liability to lie, the car must be left unattended and not on private property. See Boland v. Love, 95 U.S.App. D.C. 337, 222 F.2d 27 (1955); Casey v. Corson & Gruman Co., 95 U.S.App. D.C. 178, 221 F.2d 51 (1955); R. W. Claxton, Inc. v. Schaff, 83 U.S.App.D.C. 271, 169 F.2d 303 (1948), cert. denied, 335 U.S. 871, 69 S.Ct. 168, 93 L.Ed. 415 (1948); Howard v. Swagart, 82 U.S. App.D.C. 147, 161 F.2d 651 (1947); Note, 92 U.Pa.L.Rev. 467, 468 (1944); RESTATEMENT SECOND, TORTS §§ 448–449 (1965).

the harm, and was probably criminal, is immaterial.[15]

[Footnotes and citations omitted]

In the present case the collision occurred at a time and place not substantially removed from the time and place where the owner left the car in the street with the keys. As in the *Ross* case, this negligence caused the danger and damage that the ordinance intended to prevent, and the negligence is therefore the proximate cause of the mishap under the law of the District of Columbia. In other cases, where the mishap occurs substantially later and distant, the hiatus may tend to negative proximate cause.[16] As stated in *Ross,* however, the mere fact that a thief stole the car is not, in and of itself, an independent and unforeseeable event that cuts off liability. We do not intimate what would be the result in such cases, but only decide the case at bar on its facts.

It is equally clear that under Maryland law, if the owner had left his keys in his car in Maryland, and the thief had negligently caused the accident in that state, the injured plaintiff could not recover from the owner. For although it is an offense in Maryland to leave one's keys in an unattended motor vehicle,[17] the highest court of that state has ruled as a matter of law that the intervening conduct of a thief breaks the chain of proximate cause and insulates the offender from tort liability.[18]

■ The question for decision is whether the District's tort rule concerning liability for violation of the traffic

---

15. 78 U.S.App.D.C. 217, 218–219, 139 F.2d 14, 15–16 (1943).

16. In *Ross* the court said the negligence and proximate cause were "too clear in this case, we think, for submission to the jury." 79 U.S.App.D.C. 217, 218–219, 139 F.2d 14, 15–16. In Casey v. Corson & Gruman Co., 95 U.S.App.D.C. 178, 179, 221 F.2d 51, 52 (1955), where keys were left in a truck on private property, instead of public property for which the police regulation is applicable, negligence was found without a per se doctrine, but since the accident occurred fifteen miles south of Petersburg, Virginia and sometime later, the court ruled that negligence was "too remote from the collision in time, place and circumstance to be a proximate cause of plaintiff's injuries." In another case where negligence for leaving keys in the ignition was not based on the statute, the Municipal Court of Appeals for the District of Columbia said that, under the facts of the theft and collision, the issue of both negligence and proximate cause were properly submitted as questions of fact to the judge, who was sitting in a trial without a jury. Bullock v. Dahlstrom, 46 A.2d 370 (D.C.Mun.Ct.App. 1946); see also Colonial Parking, Inc. v. Morley, U.S.App.D.C., 391 F.2d 989 (1968). In no per se negligence case in the District of Columbia involving keys left in a car has the issue of proximate cause been left to the jury. However, in the law of the District, in other fields where statutory negligence is found, the issue of proximate cause often

is left to the jury. See *e. g.* Richardson v. Gregory, 108 U.S.App.D.C. 263, 281 F.2d 626 (1960).

Submitting the issue of proximate cause to the jury, in certain cases, is one of the ways in which the harsh doctrine of negligence per se is tempered under the District's law. Other safeguards on the doctrine of statutory negligence are: requiring that the statutory purpose was to prevent the sort of harm to the individual relying on the statute which did occur, Peigh v. Baltimore & O. Ry. Co., 92 U.S.App. D.C.198, 200, 204 F.2d 391, 393, 44 A.L. R.2d 671 (1953); allowing the jury to determine that defendant did not, in fact, violate the statute, Whetzel v. Jess Fisher Management Co., 108 U.S.App.D.C. 385, 389, 282 F.2d 943, 947 (1960); and justifying a statutory violation either because the violation was excused, Karlow v. Fitzgerald, 110 U.S.App.D.C. 9, 288 F.2d 411 (1961), or because there were other acts of due care, Hecht Co. v. McLaughlin, 93 U.S.App.D.C. 382, 214 F.2d 212 (1954).

17. MD.CODE ANN., Art. 66½, § 247 (1967 Replacement Volume), is virtually the same as the District of Columbia Traffic Regulation.

18. The question was expressly left open in Lustbader v. Traders Delivery Co., 193 Md. 433, 67 A.2d 237 (1949), and finally resolved against the injured victim in Liberto v. Holfeldt, 221 Md. 62, 155 A.2d 698 (1959), *accord* McAllister v. Driever, 318 F.2d 513 (4th Cir. 1963).

regulation applies where: the conduct prohibited by the regulation takes place in the District; and the immediate consequence of that violation (stealing of the car) occurs here; but the final sequence resulting in damage takes place in Maryland. To answer this question it is first necessary to ascertain the underlying policies and interests sought to be regulated and protected by the rules of the relevant jurisdictions and to determine whether on the facts of the case these differing state interests are in conflict.[19]

We begin with the rule of the District, turning again to the 1943 landmark case of Ross v. Hartman, *supra*. There the court said:

> The evident purpose of requiring motor vehicles to be locked is not to prevent theft for the sake of the owners or the police, but to promote the safety of the public in the streets. An unlocked motor vehicle * * * creates much more risk that meddling by children, thieves, or others will result in injuries to the public. * * * The rule we are adopting tends to make the streets safer by discouraging the hazardous conduct which the ordinance forbids. It puts the burden of the risk, as far as may be, upon those who create it.

The doctrine of Ross v. Hartman has been reaffirmed in intervening decisions of this court (*see* Boland v. Love, and other cases cited note 14 *supra*). The strength of the District's policy of "discouraging the hazardous conduct which the ordinance forbids" has not diminished during the intervening 25 years. On the contrary we have never had greater need for doctrines helping to deter injuries and crimes traceable in significant measure to keys left in unattended cars.

On March 1, 1968, the Attorney General of the United States and nineteen responsible organizations,[20] including national associations of mayors, police chiefs, district attorneys, municipal law officers, launched the National Auto Theft Prevention Campaign in a nationwide effort to reduce automobile theft. The campaign centers on a NATPC logotype:

The data distributed by the Campaign include the estimate that in 1966 more than a million cars were stolen nationally and that about 24% of the stolen vehicles were involved in accidents.[21] The theft problem is acute in the District of Columbia where, during 1967, there were over 13,000 auto thefts, an increase over 1966 of 30% as opposed to a national rise of 17%.[22] The accident rate for stolen

---

19. See CURRIE, Notes on Methods and Objectives in the Conflict of Laws, in SELECTED ESSAYS ON THE CONFLICT OF LAWS 177, 180 (1963); CAVERS, THE CHOICE-OF-LAW PROCESS 88–96 (1965). Cf. RESTATEMENT SECOND, CONFLICT OF LAWS § 145, comment c (Proposed Official Draft, May 1968).

20. American Association of Motor Vehicle Administrators; American Automobile Association; American Petroleum Institute; Automobile Manufacturers Association; Insurance Information Institute; International Association of Chiefs of Police; National Association of Counties; National Automobile Dealers Association; National Automobile Theft Bureau; National Council on Crime and Delinquency; National District Attorneys Association; National Exchange Clubs; National Highway Users Conference; National Institute of Municipal Law Officers; National League of Cities; National Professional Driver Education Association; National Sheriffs Association; Optimists International; United States Conference of Mayors; and United States Department of Justice, Criminal Division (coordinator).

21. U. S. Dep't of Justice, Criminal Division, NATPC (pamphlet). Another survey, conducted on prison inmates, indicates something slightly under a 20% accident rate. U. S. DEP'T OF JUSTICE, CRIMINAL DIVISION, SURVEY 7 (hereafter, *Survey*).

22. Letter announcing the 1968 Washington Auto Theft Prevention Campaign, spon-

cars is estimated to be approximately 200 times the normal accident rate.[23] And in the District of Columbia, 85% of the thieves do not possess operator's permits.[24] A study has disclosed that of the total cars stolen, the key had been left in either the ignition or in the car in 42.3% of the cases.[25]

Moreover, the authorities point out that auto theft is to a large extent a crime of opportunity, unusually inviting to young people, and is often the first major episode in a criminal career.[26] The data reveal that 70% of the District of Columbia auto thefts are by offenders under the age of 21.[27]

The District has a strong policy of deterrence of auto theft.[28] That policy must be viewed in the light of the probabilities of consequential hazards. This perspective fosters our conclusion that there is a significant District of Columbia interest in the application of the District rule of liability to an actor who leaves his car keys accessible to a thief in the District,[29] and sets in motion the sequence of events that enlarges the probability of, and in a significant number of instances contributes to, results of death, disability and destruction.

Aside from the purpose served by the tort rule of Ross v. Hartman in deterring highly hazardous motorist conduct, tort liability also has the purpose of shifting the loss from the injured victim and his creditors to the vehicle operator who, in turn, if he chooses, may procure insurance. It is true that this compensatory policy has the greatest relevance to cases when the mishap occurs in the District and when District residents are plaintiffs. However, to confine the benefits of the *Ross* rule to the territory ceded by the states of Maryland and Virginia to form the Nation's Capital would be to shun the present reality of the economically and socially integrated greater metropolitan area. It is a commonplace that residents of Maryland are part of the Washington metropolitan trading area, and that District residents and businesses have an interest in the well-being of these citizens of the Free State. We can not fairly impute to Congress, or its delegate, the parochial intention to restrict recovery based on violation of the District regulation to District residents, especially taking into account the national constituency of Congress,[30] in the absence of an express disclaimer.[31]

It is plain, in short, that a legitimate and indeed powerful policy and interest of the District of Columbia is involved in this case and is furthered by application of the rule of Ross v. Hartman.

Looking to the interests of Maryland, where the accident occurred and the plaintiff resides, its highest court has interpreted a nearly identical statute as being aimed at preventing theft, tampering with a car, or the starting of a car under its own momentum if the brakes

sored locally by the Federal Bar Association.

23. *See Survey* at page 7. In the District of Columbia it is estimated that 46% of the recovered stolen vehicles have been damaged. Report of the President's Commission on Crime in the District of Columbia 103 (1966) (hereafter, D. C. Crime Comm'n Report).

24. D. C. Crime Comm'n Report 103.

25. In an additional 16.7% of the cases, the motorist invited theft by leaving the ignition unlocked. The astounding percentage of auto thefts thus traceable to motorist neglect is nearly 60%, a marked increase over the 42% figure revealed by a 1962 survey. *Survey* at page 4.

26. *See Survey* at page 8.

27. D. C. Crime Comm'n Report 101.

28. The maximum penalty for auto theft in the District allows a one thousand dollar fine and up to 5 years imprisonment. 22 D.C.Code § 2204 (1967).

29. *See* Schmidt v. Driscoll Hotel, Inc., 249 Minn. 376, 82 N.W.2d 365 (1957); CAVERS, *supra* note 19, at 159–66, *See also* Moore v. Pywell, 29 App.D.C. 312, 9 L.R.A.,N.S., 1078 (1907) (*semble*).

30. *See* CAVERS, *supra* note 19, at 161 n. 29.

31. *Compare* Bostick v. Smoot Sand & Gravel Corp., 260 F.2d 534 (4th Cir. 1958).

should slip.[32] While that court agrees that the statute creates a duty of safety to the public, this apparently is limited to the immediate vicinity of the parking place for the court says it does not extend "to all the world, but must be a foreseeable duty to a class of which the plaintiff was a member."[33] The court feels that the thief, an "independent intervening cause",[34] and not the car owner, is the proximate cause of the accident. The Fourth Circuit, in explaining Maryland's law, said that the owner's negligence was too remote from the accident, where a thief intervenes, to find proximate cause.[35]

Thus Maryland's interests are aimed at prevention of theft, tampering, accidental starting of a car, and possibly some very immediate injury. Maryland, however, also expresses an interest in protecting car owners from tort liability for injury caused by car thieves. Yet, that interest of Maryland in curtailing liability of a car owner, would not seem to extend to an owner like our defendant, who is not a citizen of Maryland but rather a resident of the District of Columbia. This seems especially true where it is a Maryland citizen who is being compensated for his injuries. It is obvious that the finding of such liability would in no way violate the other interest of Maryland in preventing theft or tampering with cars by requiring removal of keys from parked cars; if anything, it fosters that interest.

Thus, we are not concerned with any real "conflict" between the interests of Maryland and the District in this case. The fact that two states have different rules where all the factors are oriented to one state does not necessarily mean that there is a "conflict" in which one state demands and the other rejects the application of its rule to a situation where the pertinent factors arise in two or more states. Where there is no such conflict of interest in a multi-state situation, as this court and others have noted, there is a "false conflicts" situation.[36] In such a case application of the appropriate rule is simplified. We think the D.C. Court of Appeals was correct in its conclusion that appellant's liability turns on the District of Columbia's rule in Ross v. Hartman.[37]

The cause is remanded for further proceedings consistent with this opinion.

So ordered.

---

32. Liberto v. Holfeldt, 221 Md. 62, 155 A.2d 698 (1959).

33. *Id.* 221 Md. at 65, 155 A.2d at 701.

34. *Ibid.*

35. McAllister v. Driever, 318 F.2d 513, 517 (4th Cir. 1963).

36. Williams v. Rawlings Truck Line, Inc., 123 U.S.App.D.C. 121, 357 F.2d 581 (1965). See generally CURRIE *supra* note 19, passim; CURRIE, The Disinterested Third State, 28 LAW & CONTEMP. PROB. 754 (1963); CAVERS, *supra* note 19, at 88–113; Baade, Counter-Revolution or Alliance for Progress? Reflections on Reading Cavers, The Choice-of-Law Process, 46 TEXAS L.REV. 141, 142–156 (1967). See also Comment, False Conflicts, 55 CALIF.L.REV. 74 (1967). But see Ehrenzweig, "False Conflicts" and the "Better Rule": Threat and Promise in Multistate Tort Law, 53 VA.L. REV. 847 (1967).

37. Our disposition renders it unnecessary to resolve the controversy in the terms formulated by counsel, both of whom invoke the concept of applying the law of the "place of the wrong", but one of whom (appellant) asserts that this place is Maryland, with support in Beale, *supra* note 7, at § 377, while appellee says it is the District, with support in Moore v. Pywell, 29 App.D.C. 312, 9 L.R.A., N.S., 1078 (1907). Nor is it mere happenstance that the counsel before us offer sharply differing views on this subject. Strong differences of opinion frequently arise in selecting the place of the wrong, see Weintraub, A Method For Solving Conflict Problems—Torts, 48 CORNELL L.Q. 215 (1963); Rheinstein, The Place of Wrong: A Study in the Method of Case Law, 19 TULANE L.REV. 165 (1944). For an exemplification of the difficulties, see Waynick v. Chicago's Last Dept. Store, 269 F.2d 322, 77 A. L.R.2d 1260 (7th Cir. 1959), where the court, purporting to apply the law of the place of the injury (Michigan) looked to the place of the defendant's conduct (Illinois) to ascertain the appropriate standard therefor.