Erma C. SMITH, Appellant,

v.

ROGERS MEMORIAL HOSPITAL, Appellee.

No. 11339.

District of Columbia Court of Appeals.

Argued Nov. 10, 1977.

Decided Feb. 1, 1978.

J. Harry Welch, Washington, D. C., for appellant. Ford E. Young, Jr., Washington, D. C., was on the brief for appellant. Thurman L. Dodson, Washington, D. C., and Arthur M. Wagman, Rockville, Md., also entered appearances for appellant.

Richard W. Boone, Washington, D. C., for appellee.

Before KELLY, GALLAGHER and YEAGLEY, Associate Judges.

GALLAGHER, Associate Judge.

In a medical malpractice suit brought by appellant Erma C. Smith, the jury returned a verdict for appellee Rogers Memorial Hospital (hereinafter cited as Rogers Memorial) and the trial court entered judgment accordingly. We find none of appellant's contentions persuasive, and therefore affirm.

On September 28, 1970, appellant sustained certain injuries as the result of a fall on a D.C. Transit System bus. She was taken to the emergency room at Rogers Memorial where she was treated for injuries to her leg and advised to return for further treatment the next day. She returned the next day, but what happened from that time until her September 6, 1971 visit to Rogers Memorial was the subject of dispute. According to appellant's version of events, from September 29, 1970 until September 6, 1971 she had frequently complained to the hospital of vaginal bleeding at each of many subsequent visits to Rogers Memorial and she received no medical examination for this condition but was simply told to rest and keep her feet up. The hospital records show five follow-up visits by appellant. Both parties agree that appellant complained of vaginal bleeding at the visit on September 6, 1971, but the hospital denies that she ever so complained previously. As a result of this last visit, appellant was directed by one of the staff physicians at Rogers Memorial to seek gynecological care and treatment at D.C. General Hospital.

Appellant then reported to D.C. General Hospital on the evening of September 6, and was examined and admitted. On September 8, Ms. Smith underwent a "D&C" operation in an attempt to control the bleeding. The operation failed to do so. Laboratory reports indicated a pre-cancerous condition of her uterus. On September 15, appellant underwent a total abdominal hysterectomy and bilateral salpingo-oophorectomy, performed by D.C. General Hospital staff physicians. Subsequently, complications developed, including gangrene, and Ms. Smith's right leg was amputated below the knee on October 14, 1971.

As a result of this amputation, Ms. Smith claimed to be permanently and totally disabled and to have sustained substantial economic losses. She filed suit against Rogers Memorial and against both the District of Columbia and D.C. General Hospital. The action was dismissed as to the District of Columbia government but allowed to proceed against D.C. General Hospital. This latter action was consolidated with the suit against Rogers Memorial. The jury was unable to reach a unanimous verdict with respect to D.C. General Hospital.[1]

1. Ms. Smith and D.C. General Hospital subsequently reached a settlement.

Appellant first contends that the jury's verdict was both "contrary to the evidence" and "contrary to the weight of the evidence." "When the issues of fact were tried by jury, the court shall review the case only as to matters of law." D.C. Code 1970, § 17–305(a). Appellant has not argued that the jury was improperly instructed as to the law applicable to a determination of her claim against Rogers Memorial.[2] Consequently, "the presumption must be that the jurors were properly instructed by the trial judge, that they were guided in their deliberations by such instructions, and that they were satisfied that . . . ."[3] the evidence did not support a finding of negligence by Rogers Memorial. Cf. Jones v. Miller, D.C.App., 290 A.2d 587, 590 (1972) (the same presumption leading this court to approve a jury verdict finding negligence and a causal relationship between that negligence and the injuries complained of). Unless the facts admit of but one inference, they are properly for determination by the jury. Hardy v. Hardy, D.C.App., 197 A.2d 923, 925 (1964).

The negligence issue here depended principally upon whether the jury believed that Ms. Smith had complained of her vaginal bleeding to the hospital before September 6, 1971. There was no question that the hospital had not treated or examined her for that condition prior to that date.[4] The only evidence to support appellant's claim was testimony by her and her witnesses that she had been bleeding heavily and had complained of that condition to the hospital prior to September 6, 1971. In rebuttal, however, there was evidence that Rogers Memorial's records revealed only six visits by Ms. Smith subsequent to the bus injury—none of which records showed any complaint by her of vaginal bleeding, except for the last visit, on September 6, 1971. Testi-

mony was also introduced that emergency room records such as those of Rogers Memorial are generally reliable for the purpose for which they are prepared—which is to determine a patient's chief complaints needing treatment. There was also testimony that although a patient could have gone once to Rogers Memorial for treatment without such visit being recorded by the hospital, the hospital would not have failed to have kept records if there had been more than one visit. D.C. General Hospital medical records revealed that upon her admission Ms. Smith said her last normal menstrual period had occurred in September of 1970 and that she had done no significant bleeding since that time, except for "spotting" three times, until "Sunday night [preceding her admission] when she began to bleed heavily." On cross-examination all of her witnesses exhibited uncertainty as to the facts and dates of her bleeding complaints or else testified to having observed her massive bleeding on the few days prior to her admission to D.C. General on September 6, 1971. Finally, results of a blood test conducted on Ms. Smith at the time of her admission to D.C. General Hospital revealed that her blood hematocrit level measured 37.2. Two of the physicians who testified indicated that such a hematocrit level was within the normal range. Also, there was specific testimony that a person who had suffered from bleeding as heavy and prolonged as Ms. Smith had asserted, would have had a much lower level and been noticeably anemic.

There manifestly was ample evidence to support the jury's verdict. As the Supreme Court said in Lavender v. Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916 (1946), "where . . . there is an evidentiary basis for the jury's verdict, the

---

2. Appellant does argue, however, that one instruction of the trial court was prejudicial as being too close to a coercive "Allen charge" (see Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896)). This argument is considered separately, since it is not pertinent to the issue of the sufficiency of the evidence to support the jury's verdict. See discussion infra.

3. Jones v. Miller, D.C.App., 290 A.2d 587, 590 (1972).

4. Appellee conceded that if appellant's assertions about her complaints and lack of care were believed by the jury, "it would clearly have implicated the hospital in the grossest type of medical neglect."

jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion." *See also Christie v. Callahan,* 75 U.S.App.D.C. 133, 148, 124 F.2d 825, 840 (1941). Controversies of fact and of witnesses' credibility are not appropriate for our review when the record discloses reasonable support for the jury's verdict. *Zaiko v. District of Columbia,* 138 U.S.App. D.C. 336, 338, 427 F.2d 606, 608 (1970).

■ Appellant also contends that the trial court erred in ruling that the liability of Rogers Memorial, if any, could not extend to any element of damages arising beyond September 6, 1971. The question thus raised is whether there was sufficient evidence in the record to show that negligent treatment by Rogers Memorial, if found, could have been a factor in the harm incurred by appellant after September 6, 1971. We are not required to decide that issue in the context of this case because the jury's verdict for appellee necessarily means that the jury found Rogers Memorial not to have been negligent with respect to Ms. Smith. Not having been negligent, the question of its liability for harm incurred by Ms. Smith after September 6, 1971 does not arise. Therefore, even if we were to assume that the trial court erred in so limiting the liability issue, the ruling did not prejudice appellant.

Ms. Smith also asserts reversible error because of the trial court's failure to grant her mistrial motion. Her counsel moved for a mistrial after appellee's counsel made a preliminary remark of questionable propriety concerning the jury's own knowledge about the "specter of medical malpractice." After her motion for mistrial was made, the trial court called counsel to the bench, denied the motion, and admonished appellee's counsel not to pursue his malpractice comment. The court then instructed the jury not "to consider any statements having to do with any alleged atmosphere that does or does not prevail regarding malpractice cases. That is not something of evidence and you should disregard that entirely." As we have stated previously:

> The test therefore to determine whether counsel's comments were such as to constitute prejudicial error is first, whether appellee's attorney, was guilty of misconduct which was likely to mislead, improperly influence, or prejudice the jury
>
> . . . .

*Ridilla v. Kerns,* D.C.Mun.App., 155 A.2d 517, 520 (1959). The second prong of the test stated in *Ridilla v. Kerns, supra* at 520, deals with whether the jurors were "left with wrong or erroneous impressions which were likely to mislead, improperly influence, or prejudice them to the disadvantage of the appellants[,]" in the absence of an immediate curative instruction by the trial court.

■ Although appellee's remark was without support in the record and should not have been made because the content of his remark could have improperly influenced the jury, we do not think this particular statement, as far as it went, was sufficiently prejudicial as to warrant reversal. *See Borger v. Conner,* D.C.App., 210 A.2d 546, 548–49 (1965); *Ridilla v. Kerns, supra* at 520; *Gasque v. Saidman,* D.C.Mun.App., 44 A.2d 537, 539–40 (1945). Furthermore, the prompt and clear instruction of the trial court, in this situation, was adequate to repair any possible prejudice produced by the improper statement.[5] *See Gasque v. Saidman, supra* at 539–40; *Behrman v. Sims,* 81 U.S.App.D.C. 303, 304, 157 F.2d 862, 863 (1946).

Appellant also complains of an instruction given by the trial court to the jury when, during the jury's second day of delib-

---

5. Appellant also complains of defense counsel's reference during his closing argument to the "tubs and tubs of blood" which Ms. Smith alleged she had bled. She claims that this phraseology taken in context with appellee's counsel's reference to her as a "lady who was trying to convey a heavy, serious, substantial amount of bleeding, lasting for a long, long time" so prejudiced her in the eyes of the jury as to have influenced the verdict against her. Even aside from the fact that Ms. Smith first used the phrase in her own testimony, we do not find counsel's use of the phrase warrants reversal on the grounds of potential prejudice in the minds of the jury.

eration, one of the jurors became so emotionally upset that she had to leave the jury room. Appellant characterizes the instruction as being in the nature of the *Allen* charge[6] and claims that the judge erred in not also giving the requested, supplementary instruction that the jurors should not give up their individual opinions, unless they were convinced by the evidence to do so. We disagree with appellant's characterization of the trial court's instruction and find no error in the denial of appellant's requested supplementary instruction.

The trial court was faced with a troublesome situation. One of the jurors had departed from the jury room, cutting off further deliberations, because she was emotionally upset. Insofar as it appears, this was due to some animosity among the jurors. The trial court handled the situation resourcefully—calling in the jurors, instructing them to deliberate in a calm and reasonable manner, and then dismissing them from any further deliberations that day, so that they could start fresh the next day. The following was his instruction:[7]

You have had the responsibility since noontime yesterday to deliberate on what amounts to two substantial cases. It has been plain to all, the Court and counsel, from the flow of your communications that the jury is performing their responsibility in a conscientious way.

It is not unusual, ladies and gentlemen, that in the course of deliberations upon substantial cases, that there will be differences among jurors. And, indeed, this is the essence of our jury system, which reposes ultimate confidence in the ability of the jury to resolve the disputes of fact in the case and to reach a unanimous verdict, if this is possible, consistent with the oath which you have taken.

What is important, however, ladies and gentlemen, is the spirit in which you approach the process of deliberations. And, I remind you that you, each—each of you is a judge deliberating upon this case and

you should deliberate upon it. You should discuss it, ladies and gentlemen, as objective, reasoning men and women. Listen to each other's points of view, allow each of your fellow judges to express his or her viewpoint. Listen carefully to the expressions of your colleagues and respond accordingly.

You should, at all times, ladies and gentlemen, be of a collaborate of minds that is open, [sic] that is attentive, that is not locked in preconceptions which are based, not upon reason, but upon arbitrariness. That has no place in your deliberations.

You should approach your responsibilities as reasonable, fair minded jurors, pledged to decide this case, if you reasonably can, based upon the evidence and the law.

We all exhort you and solicit your continued responsible action in this case. Don't allow your discussion to deteriorate, so that you are something less than judges. If the going gets a little hot, take a break and come back to your responsibilities when you have regained your poise and you are able to continue your discussions as reasoning judges and jurors.

This case—both cases, ladies and gentlemen, are important, important to the parties and to the attorneys. We want you to continue your deliberations. We don't want you to become stuck on a momentary expression by somebody, and, we don't want feelings to escalate.

■ This instruction does not approach the coercive nature of the *Allen* charge, which has been characterized as being "a charge which specifically refers to a majority-minority polarization . . . ." *Winters v. United States*, D.C.App., 317 A.2d 530, 532 (1974). The *Allen* charge "pressures the minority and only the minority." *Winters, supra* at 535 (concurring opinion). Here the instruction does not mention a

6. *Allen v. United States, supra.*

7. The trial court's instruction in this case would merit consideration when trial judges

are faced with a similar jury problem in the future.

majority-minority split, much less represent an attempt to pressure any jurors to change their minds. The focus of the trial court was on a rational and unemotional deliberative process among the jurors, with respect for each other's own opinions. Appellant's requested instruction was unnecessary under these circumstances.[8]

*Affirmed.*

---

8. We have examined the remaining contentions of appellant and conclude they are without merit.