KAISER–GEORGETOWN COMMUNITY HEALTH PLAN, INC., and Capital Area Permanente Medical Group, P.C., Appellants,

v.

Mary Thomas STUTSMAN, Appellee.

Nos. 84–1398, 84–1470.

District of Columbia Court of Appeals.

Argued Feb. 1, 1985.
Decided April 22, 1985.

Richard W. Boone, Washington, D.C., with whom Lori J. Lustig, Washington, D.C., was on the brief, for appellant Kaiser-Georgetown Community Health Plan, Inc., R. Harrison Pledger, Jr., McLean, Va., for appellant Capital Area Permanente Medical Group, P.C. J. Kathleen O'Shea Poux, Silver Spring, Md., also entered an appearance for appellant Capital Area Permanente Medical Group, P.C.

Thomas P. Mains, Jr., Alexandria, Va., with whom Robert Cadeaux, Washington, D.C., was on the brief, for appellee.

Before PRYOR, Chief Judge, and NEBEKER and MACK, Associate Judges.

MACK, Associate Judge:

This case presents a choice-of-law issue in the context of a medical malpractice action. Defendants, appellants here, are two District of Columbia corporations, Kaiser-Georgetown Community Health Plan, Inc. (Kaiser), a health maintenance organization (HMO), and Capital Area Permanente Medical Group, P.C. (Capital), a provider of health care that has contracted to provide health care services at medical facilities operated by Kaiser.

Plaintiff-appellee, Mary Stutsman, is a resident of Arlington County, Virginia, and is employed in the District. Mrs. Stutsman was enrolled as a Kaiser HMO subscriber and received health care from several physicians employed by Capital at Kaiser's Springfield, Virginia, medical facility. She brought this action in the Superior Court for malpractice arising out of the alleged negligence of Capital's employees. In the complaint, recovery is sought only as against Kaiser and Capital under a theory of respondeat superior.

In the trial court, the defendants moved to dismiss the complaint on several grounds, each premised on their contention that Virginia law should be applied to this action. Defendants argued, first, that the courts of the District of Columbia are an "inconvenient forum" for an action governed by Virginia law, and that the case should therefore be dismissed based on the doctrine of "forum non conveniens"; second, that dismissal is warranted because the plaintiff did not comply with the administrative prerequisites created by Virginia statute to the filing of a malpractice complaint, *see infra;* and third, that the Virginia statute of limitations bars the action. The defendants asked in the alternative that the trial court apply the Virginia law of negligence to the case.

The court, Judge Goodrich presiding, refused to dismiss the complaint on any of the grounds asserted by the defendants. In addition, the court found that the District of Columbia has a strong interest in this litigation, and accordingly held that the law of the District would be applied to the plaintiff's cause of action. We affirm.

I.

Mary Stutsman was employed as a registered nurse at Georgetown University. As an employment benefit, beginning in January of 1981, she became enrolled as a

subscriber to Kaiser's health plan.[1] Kaiser is a District of Columbia corporation and its corporate offices are located in the District. Kaiser maintains several health care facilities in the District of Columbia metropolitan area.

Stutsman became pregnant in the Spring of 1981, and in June of that year she sought prenatal care under the Kaiser plan at the Kaiser facility closest to her home, in Springfield, Virginia. She became aware of a nodule in her right breast in August of 1981, and she alleges that she brought it to the attention of physicians employed at the clinic on several occasions commencing in September of that year. The clinic's physicians are employees of appellant Capital, which is a District of Columbia corporation that contracts with Kaiser to provide health care in Kaiser facilities in the District and surrounding suburbs. Based on manual palpation, the Capital employees diagnosed the nodule as benign. Stutsman alleges that despite the increasing size of the mass from September of 1981 until her child's delivery in January of 1982, her physicians took no diagnostic steps to determine its character, other than palpation.

In January of 1982, Stutsman was referred by Kaiser to a surgeon at Georgetown University Hospital, who performed a biopsy that revealed the malignant character of the mass. Stutsman alleges that the failure by the Capital physicians to take adequate steps to diagnose her illness represents care below the standard required of physicians. She further contends that as a result of the delay in diagnosis, the cancer has mestastasized and her chances of surviving the disease are correspondingly diminished. Stutsman brought this action against Kaiser and Capital in the Superior Court requesting damages for negligence in the amount of ten million dollars.

## II.

Appellants contend that the law of Virginia must be applied to this action because certain facts in this case—the plaintiff's residence in Virginia and her treatment there—demonstrate that Virginia has the most substantial contact with the events underlying the claim, and therefore the greater interest in the application of its law. They further argue that Virginia has a substantial public policy interest in limiting liability of providers of health care operating within that State. In this regard, the common law of malpractice has been modified in Virginia by the Virginia Medical Malpractice Act, 2 Va. Code §§ 8.01–581.1 to 8.01–581.20 (Michie Supp. 1984). For acts of malpractice by "health care providers" occurring after April 1977 and prior to October 1983, the Act sets a $750,000 cap on liability, id. § 8.0–581.15.[2] Appellants maintain that they are "health care providers" within the meaning of the Act, that its liability-limiting provisions are therefore applicable to them, and that to apply District law (which does not limit liability) would frustrate the public policy of the State of Virginia expressed in the Malpractice Act.

Appellants contend that the applicability of the Malpractice Act makes the courts of the State of Virginia the most appropriate forum for resolution of this controversy. They therefore conclude that this action should have been dismissed without prejudice because it was brought in an "inconvenient" forum. Since we conclude that District of Columbia law should be applied to this case, we need not reach this question. We note, however, that had this case been dismissed on the grounds of forum

---

1. There is no connection between Georgetown University and Kaiser-Georgetown Community Health Plan, Inc.

2. This section of the Malpractice Act was amended in 1983 to provide for a cap of $1 million for acts of malpractice occurring on or after October 1, 1983. Since the events at issue here occurred prior to that date, the $750,000 cap would be applicable to this case were we to hold, first, that Virginia law must be applied as the rule of decision, and second, that the Act covers negligence attributable to Kaiser and Capital. See infra.

non conveniens, the plaintiff's access to Virginia courts would not have been assured, for appellants simultaneously argue that the Virginia statute of limitations bars this action.

The trial court, Honorable Stephen F. Eilperin presiding, initially denied the motion to dismiss without opinion. Defendants filed a motion under Super.Ct.Civ.R. 59(e) to vacate or to alter or amend Judge Eilperin's order. Following a hearing, the court, Judge Goodrich presiding, declined to dismiss the action on any of the grounds urged by the defendants. The court concluded:

> [I]t is doubtful that the defendant protective policies of the Virginia Medical Malpractice Act are relevant at all if it would seem that the State of Virginia has little, if any, interest in protecting foreign, nonlicensed health care providers from liability. To put it another way, application of D.C. law would in no wise undermine the stated policy of the State of Virginia to limit the liability of its licensed health care providers. Conversely, application of Virginia law to these D.C. Corporations would greatly undermine the policy of this jurisdiction (implicit by its rejection of artificial limits of recovery) to hold its residents liable for the full extent of their conduct.[3]

Appellants argue that the trial court's determination that they are not within the ambit of the Virginia Malpractice Act was error, that the contacts between the events here at issue and the State of Virginia are substantial, and that the public policy of the State of Virginia accordingly would be frustrated by the application of District law

to the action. We address each of these contentions in turn.

A. *Applicability of the Virginia Malpractice Statute*

The Virginia Malpractice Act is applicable to malpractice claimants and to defendants who are "health care providers" as the Act defines that term. The Act modifies the law of negligence in malpractice cases in Virginia in two ways. First, it creates a panel review procedure that either party may invoke; and once invoked, the claimant may not file suit until the process is completed.[4] Second, the Act limits the amount of recovery permitted against "health care providers" in malpractice actions.[5]

> The Act's definitional section provides: *"Health care provider"* means a person, corporation, facility or institution licensed by this Commonwealth to provide health care or professional services as a physician or hospital, dentist, pharmacist, registered or licensed practical nurse, optometrist, podiatrist, chiropractor, physical therapist, physical therapy assistant, clinical psychologist or a nursing home ... or an officer, employee or agent thereof acting in the course and scope of his employment.

2 Va. Code § 8.01–581.1(1). Health maintenance organizations are not specifically included within this list of "health care providers" covered by the Act. An initial question is whether health maintenance organizations are "corporation[s] ... provid[ing] services as a physician or hospital" under the Act. The trial court appeared to

---

**3.** The trial court certified the action under D.C. Code § 11–721(d) (1981) for interlocutory appeal on matters not appealable as a matter of right. Defendants then filed an appeal on the denial of the motion based on forum non conveniens (No. 84–1398) (appeal as of right), and an interlocutory appeal on all other issues (No. 84–1470). This court consolidated the two appeals and ordered expedited briefing and argument.

**4.** The Act requires any claimant to file a notice of claim to the health care provider, 2 Va. Code

§ 8.01–581.2, and under that section either the claimant or the provider may request a hearing before a medical review panel established in § 8.01–581.3. If a hearing is requested, under § 8.01–581.2 the claimant may not file suit until the panel has issued an opinion (*see* § 8.01–581.-7, setting forth duty of panel). That opinion is not conclusive in a court of law, but is admissible as evidence, § 8.01–581.8.

**5.** 2 Va. Code § 8.01–581.15. *See supra* note 2.

decide this question in the negative, and its finding comports generally with Virginia statutory language. HMOs operating in Virginia are required to be licensed, under a Virginia statute enacted in 1980, 6A Va. Code § 38.1–865 (Michie Supp.1981). The Malpractice Act has been amended in every subsequent year, but HMOs have never explicitly been included within the "health care provider" definition of § 8.01–581.1(1). Thus, although the language of the Malpractice Act may include actions alleging respondeat superior liability [6] brought against professional corporations like Capital, it does not explicitly encompass actions against HMOs like Kaiser.

We think it most appropriate, however, for the state courts of Virginia to decide in the first instance whether an action alleging respondeat superior liability of an HMO for the acts of employees who indisputably are "health care providers" within the meaning of the statute, is subject to the Malpractice Act's provisions. Accordingly, we decline to decide (nor need we for our purposes here) whether, if Virginia law were applicable to this action, the notice of claim, panel review, and liability cap provisions of the malpractice statute would be properly invoked.

## B. *Choice of Law*

Assuming, without deciding, that appellants are correct in their prediction that a Virginia court would decide to apply the Malpractice Act to protect both defendants in these circumstances, we nevertheless use our own choice-of-law principles to determine the law to be applied in an action filed in our courts, over which we indisputably have jurisdiction.

In this case we have before us "a set of facts giving rise to a lawsuit [that] justif[ies], in constitutional terms, application of the law of more than one jurisdiction." *Allstate Insurance Co. v. Hague*, 449 U.S.

302, 307, 101 S.Ct. 633, 637, 66 L.Ed.2d 521 (1981) (plurality opinion). Appellants describe this case as involving "conduct occurring entirely within the Commonwealth of Virginia and asserted by one Virginia resident against two corporate residents of Virginia." Brief for Appellants at 1. The case could just as easily be described as involving the vicarious liability of two District of Columbia corporations for medical malpractice upon a member of the District's workforce residing in the D.C. metropolitan area, whose relationship with the defendants grew out of her employment status within the District. *See Allstate*, 449 U.S. at 315 n. 21, 101 S.Ct. at 641 n. 21.

■ Mrs. Stutsman's Virginia residence, contrary to appellants' assertion, does not mandate the application of Virginia law to this action, *see id.* at 315, 101 S.Ct. at 641. At the time of the injury, Stutsman was employed within the District, and "[e]mployment status is not a sufficiently less important status than residence," when combined with other contacts, to prohibit our use of District of Columbia law and to require us to apply Virginia law here, *id.* at 317, 101 S.Ct. at 642.

■ Similarly, we need not give controlling significance to the fact that the misdiagnosis of plaintiff's disease by employees of the defendants occurred in Virginia. A tort "need not occur within a particular jurisdiction for that jurisdiction to be connected to the occurrence. Numerous cases have applied the law of a jurisdiction other than the situs of the injury where there existed some other link between that jurisdiction and the occurrence." *Id.* at 314 & n. 19, 101 S.Ct. at 640 & n. 19 (citations omitted). Most jurisdictions have rejected the "wooden *lex loci delicti* doctrine," *id.* at 316 n. 22, 101 S.Ct. at 642, which in the past was the majority rule of decision governing choice-of-law in tort cases. *See Myers v. Gaither*, 232 A.2d

---

**6.** In her compalint, Mrs. Stutsman does not allege any direct negligence of Kaiser or Capital in hiring or supervising their physician-employees. Mrs. Stutsman is thus seeking to hold Kaiser and Capital liable under a respondeat superior theory for the alleged negligence of their employees.

577, 583 (D.C.1967) (recognizing that "a strict rule of *lex loci* is not infrequently inadequate"), *aff'd*, 131 U.S.App.D.C. 216, 404 F.2d 216 (1968). Where the location of the injury may be described as "fortuitous," the court is not bound by the law of the place of the tort.

In *Hitchcock v. United States*, 214 U.S. App.D.C. 198, 204, 665 F.2d 354, 360 (1981), for example, the circuit court applied District law to an action against the United States government alleging that a Virginia resident was injured as a result of an immunization administered at a Virginia clinic, where the clinic's services were provided under a health plan sponsored by the U.S. Department of State. The court described the place of the injury as "fortuitous," *id.*, in light of the fact that the relationship of the parties to the litigation was centered in the District;[7] the court therefore applied the District's standard of care to the action.

Conversely, in *Williams v. Rawlings Truck Line, Inc.*, 123 U.S.App.D.C. 121, 125, 357 F.2d 581, 585 (1965), the fact that an automobile accident took place in the District was an insufficient contact with this forum to warrant the application of D.C. law to a subsequent negligence action, where other contacts between the parties and the action were with the State of New York, and New York had a substantial interest in the application of its rules. The place of the accident in *Williams* was described as "wholly fortuitous," *id.*, and District of Columbia rules of decision were therefore held inapplicable.

The relationship between the parties to the instant litigation can be described as centering around the District of Columbia, since the agreement to provide health care was a benefit of the plaintiff's District employment. The contract for health services between the parties does not specify that the plaintiff would be treated at Kaiser's Virginia clinic. Appellants do not take issue with plaintiff's assertion that she could have as easily requested treatment at the clinic closest to her workplace, in the District. In this sense, the happenstance of the alleged misdiagnosis in Virginia could be characterized as a "fortuity."

■ Further, there is nothing so "arbitrary []or fundamentally unfair" amounting to a denial of due process in the adjudication of these defendants' negligence by the standards of the District, *see Allstate*, 449 U.S. at 313, 320, 101 S.Ct. at 640, 644 (Opinion of Brennan, J.); *id.* at 326, 101 S.Ct. at 647 (Stevens, J., concurring). Both defendants are District of Columbia corporations, with primary places of business here. Neither can "claim unfamiliarity with the laws of [this] jurisdiction [or] surprise that the state courts might apply forum law to litigation in which [they are] involved." *Id.* at 317–18, 101 S.Ct. at 642–43 (Opinion of Brennan, J.). There can be no "unfair surprise" to these defendants nor any "frustration of legitimate expectations" in our application of the District's law of negligence,[8] for the defendants were aware that the plaintiff was both a resident

---

7. The court in *Hitchcock* analogized the government defendant "to a corporation of national scope headquartered in Washington with a clinic ... in Virginia," 214 U.S.App.D.C. at 204, 665 F.2d at 360, not unlike appellants here. Thus, the failure by medical personnel at the Virginia clinic in *Hitchcock* to warn the plaintiff of the risks of the vaccine administered was attributable to action or inaction by the Washington "headquarters," *id.* at 203, 665 F.2d at 359. Similarly, Mrs. Stutsman may be able to prove at trial that the decision by several Capital physicians at the Kaiser clinic in Virginia to delay referring her to an outside physician for diagnostic testing is attributable to a policy originating with one or both appellant corporations to

discourage outside referrals for financial reasons.

8. A major concern of all three opinion writers in *Allstate*, in evaluating a claim that application of forum law denied a defendant due process, is that the State should refrain from frustrating the defendant's legitimate expectations as to the standards by which he would be governed in the event of suit. 449 U.S. at 318 n. 24, 101 S.Ct. at 643 n. 24 (Opinion of Brennan, J.); *id.* at 324 n. 11, 327 & n. 16, 329–30 n. 22, 330 & n. 23, 331, 101 S.Ct. at 646 n. 11, 647 & n. 16, 648–49 n. 22, 649 & n. 23, 649 (Stevens J., concurring); *id.* at 336, 101 S.Ct. at 652 (Powell, J., dissenting).

of the metropolitan area[9] and a District employee. In addition, at the time the plaintiff became enrolled in the Kaiser plan, the defendants had no expectation that she would patronize only the Virginia clinic.

■ Although we are not bound to apply Virginia law here, we should choose to do so if, under our choice-of-law principles, we find that Virginia's interest in this litigation is substantial, and that application of District law would frustrate a clearly articulated public policy of that state.

■ In tort cases our decisions have used "governmental interests" analysis to determine whether we will apply our law to an action. *Williams v. Williams*, 390 A.2d 4, 5 (D.C.1978); *Myers v. Gaither*, 232 A.2d 577, 583 (D.C.1967), *aff'd*, 131 U.S.App.D.C. 216, 404 F.2d 216 (1968); *see Biscoe v. Arlington County*, 238 U.S.App.D.C. 206, 214, 738 F.2d 1352, 1360 (1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 909, 83 L.Ed.2d 923 (1985); *In re Air Crash Disaster Near Saigon, South Vietnam on April 4, 1975*, 476 F.Supp. 521, 526 (D.D.C.1979). This approach requires us "to evaluate the governmental policies underlying the applicable laws and to determine which jurisdiction's policy would be most advanced by having its law applied to the facts of the case under review." *Williams*, 390 A.2d at 5–6. "When the policy of one state would be advanced by application of its law, and

that of another state would not be advanced by application of its law, a false conflict appears and the law of the interested state prevails." *Biscoe*, 238 U.S.App. D.C. at 214, 738 F.2d at 1360. A true conflict is presented when both states have an interest in applying their own laws to the underlying facts; in that event, the forum law will be applied unless the foreign state has a greater interest in the controversy. *Id.; see Mazza v. Mazza*, 154 U.S.App.D.C. 274, 280–81, 475 F.2d 385, 391–92 (1973) (law of Maryland applied since Maryland had a "significant interest" in the controversy and there was no corresponding "strong local policy" of the District at stake in the litigation requiring application of District rule); *In re Air Crash Disaster*, 476 F.Supp. at 526 & n. 11.[10]

An analysis of the competing interests of the District of Columbia and of Virginia in the application of their own laws and furtherance of their separate public policies in this litigation reveals no real conflict.

■ The District of Columbia has a substantial interest in this litigation. Both defendants are corporate citizens of the District of Columbia.[11] The District has a significant interest, reflected in the fact that it imposes no cap on liability for malpractice, in holding its corporations liable for the full extent of the negligence attrib-

---

9. In this regard, we note with approval the remarks of the circuit court in *Gaither v. Myers*, 131 U.S.App.D.C. 216, 223, 404 F.2d 216, 223 (1968):

> It is true that [the District's] compensatory policy has the greatest relevance to cases when the mishap occurs in the District and when District residents are plaintiffs. However, to confine the benefits of the [District's] rule to the territory ceded by the states of Maryland and Virginia to form the Nation's Capital would be to shun the present reality of the economically and socially integrated greater metropolitan area. It is a commonplace that residents of Maryland [and Virginia] are part of the Washington metropolitan trading area, and that District residents and businesses have an interest in the well-being of the[ ] citizens of [those] State[s].

10. "The forum State's interest in the fair and efficient administration of justice" together with the "substantial savings [that] can accrue to the State's judicial system" when its judges are "able to apply law with which [t]he[y are] thoroughly familiar or can easily discover," tilt the balance in favor of applying the law of the forum state when the interests of both jurisdictions are equally weighty. *See Allstate*, 449 U.S. at 326 & n. 14, 101 S.Ct. at 647 & n. 14 (Stevens, J., concurring).

11. Further, the fact that jurisdiction over the defendants in our courts is therefore "unquestioned [is] a factor not without [constitutional] significance" in assessing the applicability of District law to this case. *Allstate*, 449 U.S. at 317 n. 23, 101 S.Ct. at 642 n. 23 (Opinion of Brennan, J.).

utable to them. *See Allstate*, 449 U.S. at 318, 101 S.Ct. at 642 (Opinion of Brennan, J.).

In addition, the District has an interest in protecting a member of its work force who contracts for health services with a District of Columbia corporation within this forum and then is injured by the negligence of that corporation's agents. The plurality opinion in *Allstate* recognized a plaintiff's employment status within the forum state as "a very important contact" for choice of law purposes. 449 U.S. at 313, 101 S.Ct. at 640. The importance of this contact derives from the fact that "[t]he State of employment has police power responsibilities towards the nonresident employee that are analogous, if somewhat less profound, than towards residents." *Id.* at 314, 101 S.Ct. at 640. The work force of the forum state, wrote Justice Brennan, "is surely affected by the level of protection the State extends to it, either directly or indirectly. Vindication of the rights of [a plaintiff who is employed within the forum state], therefore, is an important state concern." *Id.* at 315, 101 S.Ct. at 641.

Justice Powell, in his dissent in *Allstate*, agreed that forum employment "provides a significant contact for furtherance of some local policies," *id.* at 338–39, 101 S.Ct. at 653–54, but argued that forum employment should be considered a sufficiently substantial contact to ground the use of local law by a court of the forum to decide the case only if the plaintiff's employment "form[s] a reasonable link between the litigation and a state policy," *id.* at 334, 101 S.Ct. at 651. In other words, in the dissent's view, a state may use the plaintiff's employment within the forum as a basis for application of its own law only when there is "some connection between the facts giving rise to the litigation and the scope of the State's lawmaking jurisdiction." *Id.*

In *Allstate*, Minnesota had applied its law to an insurance dispute between a Wisconsin resident and a corporation doing business in Wisconsin and Minnesota; the dispute arose out of an accident between two Wisconsin residents. The *Allstate* plurality's decision upholding Minnesota's choice of law was based, *inter alia*, on the plaintiff's Minnesota employment. The dissent found no link between the plaintiff's forum employment and the litigation sufficient to uphold Minnesota's choice of law, for none of the issues involved in the litigation was "in any way affected or implicated by the [plaintiff's] employment status." *Id.* at 339, 101 S.Ct. at 653 (Powell, J., dissenting).

In this case, in contrast, the relationship between the parties to the litigation grew out of the plaintiff's employment within the District. Even the dissent in *Allstate*, we believe, would uphold our choice of District law in this case, for the facts demonstrate the link required by Justice Powell between the plaintiff's employment here and the relationship between the parties that gave rise to the litigation.

We have found both significant contacts between the facts underlying this action and this forum, and a substantial interest by the District of Columbia in the application of its law to the case. We proceed to consider the corresponding interests of the State of Virginia.

■ Although Virginia undoubtedly has an interest in the welfare of its residents, the Malpractice Act, which appellants contend is the applicable Virginia law, cannot be said to further that interest in these circumstances. The above-described screening process that in most cases is a prerequisite to suit in malpractice cases, together with the cap on ultimate liability, were enacted into law by the State with the primary purpose of protecting Virginia health care providers from excessive liability. The statute may also have the effect of lowering malpractice premiums for health care providers operating in Virginia. Thus, Virginia residents may be benefited incidentally by the Act in that the cost of medical malpractice insurance passed on to them through medical fees will be less than it would have been had the statute not been enacted. Nonetheless, the primary pur-

pose of the Act is to protect Virginia health care providers from claimants who seek to recover damages in excess of the amount the Virginia legislature has deemed to be generally acceptable. Virginia undoubtedly has a general interest in the full compensation of its residents for injuries incurred by the negligence of another. Virginia has determined, however, that in the area of medical malpractice, its public policy interest in the limitation of liability of health care provider defendants may outweigh its interest in the full compensation of injured plaintiffs. Thus the Malpractice Act, which appellants argue would be applicable here if we were to decide the case under Virginia law, can in no sense be said to protect the interests of plaintiffs like Mrs. Stutsman.

Although the Malpractice Act applies to all "health care providers" (as the Act defines that term) that are licensed to provide health care in the State of Virginia, the State's interest in the application of its statute becomes attenuated when its intended beneficiaries are foreign corporations with principal places of business outside the State. This is so because the financial impact upon foreign defendants of a finding of liability in excess of the statutory cap will not fall most heavily within Virginia. *See Hitchcock*, 214 U.S.App.D.C. at 204, 665 F.2d at 360.[12] Any financial impact that the State is likely to experience will derive not from the liability of these defendants but from the uncompensated injury of this plaintiff.

 It is undoubtedly true that these defendants would be better served were we

to apply Virginia's Malpractice Act here. Nevertheless, the interests of the State of Virginia and of these defendants are not identical. The above analysis reveals that the District has a substantial interest in this litigation, and that Virginia's interests would in fact be well-served, and its public policy not contravened, by the application of District law to the action. Accordingly, we affirm the trial court's decision that the District of Columbia's law of negligence is the most appropriate rule of decision in this case.[13]

*Affirmed.*

---

**12.** The court in *Hitchcock* noted:

> If a judgment were sustained against the corporation, the financial burden would surely fall on the business as a whole, headquartered out-of-state, rather than on the individual clinic. Virginia would thus not have the usual interest in having its law decide the financial responsibility of one of its residents. Washington, correspondingly, would have some interest in having its law applied to decide the liability of a business headquartered there, at least where, as here, the District has other substantial contacts with the litigation.

214 U.S.App.D.C. at 204, 665 F.2d at 360. The *Hitchcock* analysis applies with equal force in this case.

**13.** Appellants' contention that the trial court abused its discretion in refusing to dismiss the complaint on the basis of forum non conveniens is grounded entirely on its assertion that Virginia law should be applied to this case. In light of our conclusion that the trial court did not err in ruling that the District of Columbia's law of negligence should be applied to the action, appellants' forum non conveniens argument needs no further discussion.