**Ruth M. PACKER, and James C. Packer, Plaintiffs,**

v.

**KAISER FOUNDATION HEALTH PLAN OF the MID–ATLANTIC STATES, INC., et al., Defendants.**

No. Civ. A. 89–2496 SSH.

United States District Court, District of Columbia.

Dec. 29, 1989.

Thomas W. Ullrich, Washington, D.C., for plaintiffs.

Donald R. Hartman, Kathy A. Grant, Washington, D.C., for defendants.

OPINION

STANLEY S. HARRIS, District Judge.

This matter is before the Court on defendants' motion to transfer this case to the United States District Court for the Eastern District of Virginia. Upon consideration of the motion, plaintiffs' opposition

thereto, and the entire record herein, the Court concludes that defendants' motion should be granted.

## Background

This is an action alleging medical malpractice. Plaintiffs contend that Andris Neimanis, M.D., a physician employed by defendant Capital Area Permanente Medical Group ("CAPMG"), negligently failed to diagnose as cancer a "lesion" on plaintiff Ruth Packer's left ankle.[1] Defendant Kaiser Foundation Health Plan of the Mid–Atlantic States ("Kaiser") is a health care provider and health maintenance organization. CAPMG is a professional corporation of physicians which furnishes Kaiser with physicians who render medical care and treatment to its subscribers and members.

Plaintiffs reside in Fairfax, Virginia. Mrs. Packer is employed in Fairfax, Virginia, and obtained her health care coverage with Kaiser through her employer. She has designated Kaiser's Falls Church, Virginia, medical center as her primary care facility. Plaintiffs allege negligence on the part of Dr. Neimanis, who resides in Maryland and is licensed in Virginia. The alleged negligence occurred in Virginia, and the pertinent medical records are located in Virginia.

Defendants Kaiser and CAPMG are incorporated in the District of Columbia and maintain their corporate offices there. Both are licensed to do business in Virginia and, in fact, do substantial business in Virginia. The expert witnesses whom plaintiffs have retained to testify at trial maintain their offices in the District of Columbia. With the exception of Dr. Neimanis, all other potential witnesses reside in either the District of Columbia or Virginia.

On August 23, 1988, plaintiffs served a notice of plaintiff Ruth Packer's claim on Dr. Neimanis, pursuant to the Medical Malpractice Act of Virginia, 2 Va.Code Ann. § 8.01–581.2. Defendants then requested review by a medical malpractice review panel designated by the Chief Justice of the Supreme Court of Virginia. A hearing was held on August 29, 1989, and the panel, consisting of two attorneys and two physicians, ultimately found that the medical care provided did not fall below the relevant standard. Plaintiffs filed this action on September 7, 1989.

## Discussion

Defendants have moved to transfer this case to the United States District Court for the Eastern District of Virginia pursuant to 28 U.S.C. § 1404(a). The statute provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

This subsection permits the transfer of a case to a more convenient forum, even where, as here, venue would be proper under 28 U.S.C. § 1391. To determine whether such a transfer is justified under the broadly worded § 1404(a), the Court must examine the particular facts of the case, *Starnes v. McGuire*, 512 F.2d 918, 925 (D.C.Cir.1974), and exercise its discretion. *Norwood v. Kirkpatrick*, 349 U.S. 29, 32, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1955).

Clearly this case "might have been brought" in the Eastern District of Virginia, since for venue purposes, both plaintiffs reside in Fairfax, Virginia, and plaintiffs' claims arose in Virginia.[2] The Court does not deny, however, that the parties and witnesses will not be "particularly convenienced" by a move to Alexandria. *See Schleier v. Kaiser Foundation Health Plan of the Mid–Atlantic States, Inc.*, 876 F.2d 174, 177 (D.C.Cir.1989). Neither, though, will they be inconvenienced by such a transfer. Furthermore, other factors strongly warrant transferring the

---

1. Dr. Neimanis was originally named as a defendant in this action. However, on October 10, 1989, plaintiffs filed a notice of dismissal as to Dr. Neimanis, pursuant to Rule 41(a)(1) of the Federal Rules Of Civil Procedure.

2. Furthermore, neither plaintiffs nor defendants have argued that the Eastern District of Virginia would not have subject matter jurisdiction over the action or personal jurisdiction over the defendants.

case "in the interest of justice" and justify disturbing the plaintiffs' choice of forum.[3]

The only connection this case has to this District is that Kaiser and CAPMG are incorporated in, and maintain their corporate offices in, the District of Columbia. Thus, while the District of Columbia has some interest in the outcome of the case, that interest does not match the substantial interest of Virginia. Plaintiffs live in Virginia, plaintiff Ruth Packer enrolled in her health plan through her Virginia employer, and her chosen primary care facility is located in Virginia. The alleged negligence occurred in Virginia, the pertinent medical records are located in Virginia, defendants do substantial business in Virginia, and Dr. Neimanis is licensed in Virginia. Furthermore, contrary to plaintiffs' assertions, the Court concludes that Virginia law will govern this case, even if it were to remain in this District.

In compliance with District of Columbia choice-of-law rules, the Court must apply a "governmental interests" analysis to determine whether District of Columbia or Virginia law will apply. *Kaiser–Georgetown Community v. Stutsman*, 491 A.2d 502, 509 (D.C.1985) ("*Stutsman I*"). This requires the Court to "evaluate the governmental policies underlying the applicable conflicting laws and to determine which jurisdiction's policy would be most advanced by having its law applied to the facts of the case under review." *Williams v. Williams*, 390 A.2d 4, 5–6 (D.C.1978) (footnote omitted). When both jurisdictions have an interest in applying their own laws, a true conflict is present, and the Court will apply the law of the state with the stronger interest. *Biscoe v. Arlington County*, 738 F.2d 1352, 1360 (D.C.Cir.1984), *cert. denied*, 469 U.S. 1159, 105 S.Ct. 909, 83 L.Ed.2d 923 (1985). The Court concludes that in this case not only does the interest of Virginia in applying its own malpractice laws in furtherance of its underlying policies outweigh the interest of

the District of Columbia in having its law applied, but also that Virginia's policies would be undermined by the application of D.C. law.

The Virginia Medical Malpractice Act was passed in an attempt to lower the high cost of medical malpractice insurance, which the legislature believed was responsible for driving health care providers from the profession. *DiAntonio v. Northampton–Accomack Memorial*, 628 F.2d 287, 290 (4th Cir.1980). The Act requires a party to give notice of intent to file a medical malpractice action, and provides for mediation by a panel of impartial attorneys and doctors appointed by the Chief Justice. Va.Code § 8.01–581.2. The Act also places a cap on the amount recoverable in a malpractice action. Va.Code § 8.01–15. The hope is that the mediation process will resolve some claims and eliminate frivolous lawsuits, and that, together with the cap, it will ultimately lower insurance premiums. By reducing costs, the legislature sought to benefit not just the health care providers of the state, but primarily the residents, by insuring that adequate health care remained both available and affordable. *Etheridge v. Medical Center Hospitals*, 237 Va. 87, 376 S.E.2d 525, 527–28 (1989). Thus, by taking these necessary steps, Virginia acknowledged its strong interest in, and accepts its important responsibility for, insuring the availability of health care for its citizens.

Plaintiffs argue that *Stutsman I* mandates the application of District of Columbia law to plaintiffs' malpractice action. The Court of Appeals in that case held that the District of Columbia had a substantial interest "in holding its corporations liable for the full extent of the negligence attributable to them," where both defendants in a malpractice case were corporate citizens. *Stutsman I*, 491 A.2d at 509–10. This Court does not deny that the District of Columbia has some interest in curtailing

---

**3.** " 'While plaintiffs' choice of forum is entitled to some consideration, it is not determinative in view of the overall balance of convenience to the parties, especially when the forum chosen is only the statutory home state of the defen-

dant.' " *Franklin v. Southern Railway Co.*, 523 F.Supp. 521, 524 (D.D.C.1981) (citing *Quandt v. Beech Aircraft Corp.*, 317 F.Supp. 1009 (D.Del. 1970)).

negligence attributable to its residents. However, the court in *Stutsman I* also relied on another significant District of Columbia interest. The plaintiff in that case was employed in the District of Columbia, and the relationship between the defendant health care provider and the plaintiff arose out of that D.C. employment. The court found that on those facts the District of Columbia had a significant interest in protecting a member of its work force.[4] When balanced against the corresponding interests of Virginia, the court held that the combined interests of the District of Columbia outweighed Virginia's interests, and

that District of Columbia law should apply.[5] *Id.* at 511.

In this case, however, the District of Columbia's interest is substantially reduced, because Ruth Packer was employed in Virginia and obtained her Kaiser health coverage through that Virginia employer. Thus, the Court finds that Virginia's interest in regulating the health care industry for the benefit of its citizens outweighs the interest of the District of Columbia in holding its corporate citizens liable for the full extent of negligence occurring in Virginia. Virginia law, then, will apply to plaintiffs' negligence claim whether or not it is trans-

---

4. Although plaintiffs try to downplay the absence of that interest in this case, the District of Columbia Court of Appeals acknowledged that "[a] significant premise of the *Stutsman I* decision was the District's interest in 'protecting a member of its work force who contracts for health services with a District of Columbia corporation within this forum and then is injured by the negligence of that corporation's agents.'" *Stutsman v. Kaiser Foundation Health Plan,* 546 A.2d 367 (D.C.1988) ("*Stutsman II*") (citing *Stutsman I,* 491 A.2d at 510).

5. The Court questions the reasoning of the District of Columbia Court of Appeals in *Stutsman I.* First, in concluding that "no real conflict" was presented by an evaluation of the interests of the District of Columbia and the State of Virginia, the court determined that Virginia's Malpractice Act was enacted "with the primary purpose of protecting Virginia health care providers from excessive liability," and that "Virginia residents may be benefited incidentally...." *Id.* at 510. The court went on to state: "Virginia has determined ... that in the area of medical malpractice, its public policy interest in the limitation of liability of health care provider defendants may outweigh its interest in the full compensation of injured plaintiffs." *Id.* at 511. This Court believes, however, that this is an unfair interpretation of the legislative policy underlying Virginia's Act. The Act was indeed passed for the benefit of the citizens of Virginia. The legislature realized that the soaring insurance premiums physicians were being forced to pay were a direct result of the increase in the number and severity of malpractice lawsuits, and that without the availability of affordable insurance, physicians would be unable to continue to provide medical care in the state. *Etheridge,* 376 S.E.2d at 527. As stated in the preamble to the Act, "these factors constitute a significant problem adversely affecting the public health, safety and welfare...." Thus, this Court disagrees with the District of Columbia Court of Appeals that any benefit to Virginia residents from the Act is "incidental." On the

contrary, the benefit of continued health care in the state was intended.

Second, the *Stutsman I* court also found that "[Virginia's] interest in the application of its statute becomes attenuated when its intended beneficiaries are foreign corporations with principal places of business outside the State." *Id.* at 511. This Court agrees with the concurrence in *Bledsoe v. Crowley,* 849 F.2d 639 (D.C.Cir. 1988) (Williams, J., concurring), that the District of Columbia Court of Appeals failed to consider the "systemic interests" in states being able to effectively implement their policies for providing affordable health care, and in consumers being able to choose out-of-state health care providers. *Id.* at 646–47. Judge Williams noted that the District of Columbia courts are generally guided by the Restatement (Second) of Conflict of Laws (1971), which does list "the needs of the interstate ... system[ ]" as a factor to be considered in an interest analysis. § 6(2)(a). In *Stutsman I,* however, the court failed to consider the interrelationship between the two jurisdictions, and how the court's decision would undermine Virginia's attempts to address a growing problem. Furthermore, as Judge Williams noted, the court's holding will subject out-of-state health providers to higher costs which will then be passed on to the consumer in the form of higher rates. *Bledsoe,* 849 F.2d at 647. This Court agrees with Judge Williams that a less discriminatory policy would be to apply the law of the state where the services were provided. *Id.*

Finally, the court in *Stutsman I* stated that the interest of the District of Columbia in holding defendants incorporated there liable for the full extent of their negligence in malpractice cases is reflected in the fact that the District has not imposed a cap on the amount recoverable. *Id.* at 509–10. The court thus drew a negative inference, for which it offers no evidence, that Congress has decided that holding District of Columbia defendants fully liable is more desirable than reducing health care costs through the imposition of a liability cap.

ferred to the Eastern District of Virginia.[6] Furthermore, Virginia law will apply to James Packer's loss of consortium claim. *See Stutsman II*, 546 A.2d at 367. The applicability of Virginia law, in combination with Virginia's overwhelmingly strong nexus to the case, calls for the transfer of this case to the Eastern District of Virginia.

Plaintiffs argue further that transfer is precluded because the statute of limitations in Virginia may have run, and that therefore the Eastern District of Virginia is not a "district or division where [the case] might have been brought." Plaintiffs, however, misinterpret the statutory language. Courts are in agreement that a district where plaintiff's action "might have been brought" is one that has subject matter jurisdiction, as well as one in which venue is proper and defendants are amenable to service of process. *McLouth Steel Corp. v. Jewell Coal & Coke Company, Inc.*, 432 F.Supp. 10, 11 (E.D.Tenn.1976). To bar transfer of a case to a district where venue and jurisdiction are proper, simply because the action is time-barred in that district, would merely encourage forum shopping. A plaintiff could then wait until the statute of limitations has run in the jurisdiction where the case should have been brought, and then file the action in the district the plaintiff prefers, despite that jurisdiction's limited nexus to the case. Section 1404(a) was "intended in part to avoid forum shopping by plaintiffs," Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 3845 (1986), and the Court will not permit this purpose to be thwarted by strategic filing.[7]

The Court concludes that this case should be transferred to the United States District Court for the Eastern District of Virginia, Alexandria Division.

---

6. The Court notes that plaintiffs did serve notice of plaintiff Ruth Packer's claim on Dr. Neimanis, pursuant to the Medical Malpractice Act of Virginia. In their opposition to defendants' motion to transfer, plaintiffs argue that their purpose in doing so was to reserve the right to file suit and to toll the statute of limitations. While that may have been plaintiffs' intent, the fact is that they recognized that Virginia law at the very least might have applied.

7. The Court notes that in defendants' reply, CAPMG has agreed that it will waive the statute of limitations defense it has available to it under Virginia law. CAPMG also states its willingness to stipulate that CAPMG and its physicians were agents of Kaiser.