Jane DOE, Plaintiff,

v.

Richard ROE, Defendant.

Civ. A. No. 91–1403.

United States District Court, District of Columbia.

Jan. 10, 1994.

Elaine C. Bredehoft, John M. Bredehoft, Charlson & Bredehoft, Fairfax, VA, for plaintiff.

Jeffrey Harris, Walter E. Diercks, Rubin, Winston, Diercks, Harris and Cooke, Washington, DC, for defendant.

## MEMORANDUM OPINION

John H. PRATT, District Judge.

In this action, plaintiff seeks to recover for injuries allegedly resulting from the tortious communication of a sexually transmissible disease. Currently before us is defendant's motion for summary judgment under Federal Rule of Civil Procedure (Fed.R.Civ.P.) 56. This Court, sitting by diversity, is required to apply the choice of law rules of the District of Columbia. The sole issue for purposes of this motion is to determine which substantive law applies, i.e. the law of the District of Columbia or that of Virginia. For the reasons given herein, we apply the law of each jurisdiction to the events occurring within its respective territory.

### I. Background

Plaintiff and defendant met on March 21, 1990, at a reception in the District of Columbia. At all times relevant to this litigation defendant Roe was a resident of the District of Columbia. Plaintiff Doe resides in Virginia, but was employed in the District of Columbia during 1990.[1] The parties began a social relationship which developed romantically over the course of several contacts, the vast majority of which occurred in the District of Columbia.

On the night of April 26, 1990, the parties returned to plaintiff's home in Virginia after dinner in the District of Columbia. During the course of the evening, the parties engaged in sexual intercourse ("the Virginia encounter"). Complicating the legal scenario, on April 29th, the parties again engaged in sexual intercourse, this time at the Watergate Hotel in the District of Columbia ("the District encounter"). Two days later plaintiff Doe allegedly began to feel the pain associated with Herpes Simplex Type II ("herpes"), commonly known as genital herpes, and human papilloma virus, commonly known as genital warts. Because the incubation period for herpes is somewhere between two to ten days,[2] it is difficult, if not impossible, to determine which encounter resulted in plaintiff's becoming infected.[3]

Plaintiff's complaint[4] alleges that defendant intentionally misrepresented to plaintiff that he was free from sexually transmitted diseases. She seeks relief under theories of negligence, fraud, intentional and negligent infliction of emotional distress, and battery.

### II. Analysis

#### A. Standard of Review.

Fed.R.Civ.P. 56(c) permits a court to grant summary judgment when the evidence in the record shows that "there is no genuine issue as to any material fact and that the moving

---

**1.** The Court's jurisdiction is based on diversity of citizenship.

**2.** The parties disagree over the duration of the normal incubation period. We do not regard this dispute as material. See infra note 12.

**3.** Although we assume for summary judgment purposes that defendant Roe is infected, it should be noted that he continues to deny this. Medical

records, however, are "strongly indicative of current or recent infection". Medical Report of Dr. Pierce of Georgetown University, Attachment D to plaintiff's cross-petition for contempt.

**4.** To protect the privacy of both parties, the complaint and other documents containing confidential material are filed under seal.

party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of showing that there is no genuine issue of material fact[5] or that the opposing party has failed to make a showing sufficient to establish the existence of an element essential to that party's case. *Celotex v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

When the moving party has carried its burden, the burden shifts to the nonmoving party to "come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Industrial Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (citations omitted) (emphasis in original). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586, 106 S.Ct. at 1355. In reviewing the evidence, a court must draw all reasonable inferences in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Then, only when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356, is summary judgment appropriate.

### B. *Choice of Law Standard.*

■ This Court, sitting by diversity, must apply the choice of law rules of the District of Columbia. *GEICO v. Tetisoff,* 958 F.2d 1137, 1141 (D.C.Cir.1992). The law of the forum is presumed to apply unless it is demonstrated that a foreign jurisdiction has a greater interest in the controversy than does the District. *Kaiser–Georgetown Community Health Plan v. Stutsman,* 491 A.2d 502 (D.C. 1985). In determining which jurisdiction has the greater interest in the litigation, District of Columbia courts follow "a modified 'governmental interests analysis'." *Moore v. Ronald Hsu Construction Co.,* 576 A.2d 734, 737 (D.C.1990) (*quoting Hercules & Co. v. Shama Restaurant,* 566 A.2d 31, 40–41 (D.C. 1989)). This analysis should be based on factors set forth in the Restatement (Second) of Conflicts of Law ("Restatement"), § 145.[6] *See Rymer v. Pool,* 574 A.2d 283, 286 (D.C. 1990).

### C. *Application of Governmental Interests Analysis.*

The choice of law question is central to this action because criminal statutes in both jurisdictions prohibit sexual intercourse between unmarried partners. *See* 22 D.C.Code § 1002 (fornication punishable by a fine of up to $300 and/or 6 months in jail); *see also* Virginia Code § 18.2–344 (fornication punishable as Class 4 misdemeanor). Therefore, recovery is only possible in a jurisdiction which allows damage awards for tort injuries incurred while committing a crime.

■ Judge Boudin, while a member of this Court, held that District law created an exception allowing recovery for a wrong resulting from an illegal act if plaintiff is less at fault than defendant. *See Doe v. Roe* Order filed September 23, 1991 (*citing Wagner v. Pro,* 575 F.2d 882, 885 (D.C.Cir.1976)). While defendant contests Judge Boudin's holding, we assume his decision was correct for purposes of this motion.[7]

It is undisputed that recovery is barred under Virginia law. In *Zysk v. Zysk,* 239 Va. 32, 404 S.E.2d 721, 722 (1990), the Virginia Supreme Court held that a plaintiff cannot recover damages for herpes infection when she consented to engage in an immoral or illegal act. This holding would apply to an

---

**5.** To determine whether there is a genuine issue as to a material fact, it is proper for the Court to rely on the pleadings, depositions, affidavits and answers. *Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

**6.** Those factors are:

(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
(d) the place where the relationship between the parties is centered. *Id.,* § 145(2).

**7.** We note that as a general proposition, prior decisions during the course of litigation become the law of the case and should not be disturbed by a court of coordinate jurisdiction. *United States v. Eilberg,* 553 F.Supp. 1, 3 (D.D.C.1981); *see also* 18 Federal Practice § 4478 at 790.

injury caused by any tort, negligent or intentional. The *Zysk* Court concluded that,

> when the consenting participant seeks monetary reward for harm resulting from the unlawful conduct, the public interest is protected sufficiently by criminal sanctions and does not require that the participant receive compensation.... [A] contrary rule would ... encourage plaintiffs to engage in or permit illegal conduct.[8]

*Id.* Therefore, plaintiff can recover only if District of Columbia law applies.

Plaintiff urges the Court to apply District law, noting that the relationship "was centered in—indeed, was almost entirely limited to—the District of Columbia." Plaintiff's opposition, p. 7. Defendant counters that Virginia has a compelling state interest in denying reward for injury resulting from illegal conduct within its borders.

■ Both parties err in attempting to apply one jurisdiction's law to what is essentially an injury resulting from at least one of two independent acts. Either sexual encounter may have caused plaintiff's injuries. In such a setting, a jurisdiction's interest in the case varies depending on where the alleged tort was committed. *See Hercules & Co.*, 566 A.2d at 40 (courts need not decide all issues of a case under the local law of a single state).

While the Court of Appeals of the District of Columbia has renounced a *lex locus delicti* interpretation of choice of law,[9] the place where the injury occurred always remains a factor to be considered under the governmental interests analysis. *Rymer*, 574 A.2d

at 286; *see also* Restatement § 146. If a jurisdiction's interest in a case is strongest when both the situs of the injury and the domicile of the plaintiff are within its territory, *Gaither v. Myers*, 404 F.2d 216, 223 (D.C.Cir.1968), then we believe the converse is also true, i.e. other factors being equal, a state's interest is weakest when a foreign plaintiff suffers an injury outside the jurisdiction.

In such a context, the state's "significant interests" in the litigation must be substantial for its law to apply to both sexual encounters. In the case at bar, the interest of each jurisdiction in the extraterritorial application of its law is limited because both governments ban the conduct at issue. A jurisdiction has a diminished interest in its citizens being compensated in another state for engaging in conduct which·it, at least theoretically, prohibits at home. Therefore, we discuss choice of law issues separately for each sexual encounter.

### 1. *The Virginia Encounter.*

Plaintiff contends that the District has a compelling interest in holding its residents liable for the full extent of their negligence, even if the negligence occurs out of state. *See Stutsman* 491 A.2d at 511–12.[10] However, the District of Columbia's policy interest in allowing recovery for negligent acts is diminished when the conduct at issue is illegal in the District of Columbia. Consequently, the cases holding that the District has a special interest in protecting persons living elsewhere but working in the District of Columbia[11] do not apply to a situation involving

---

**8.** The Court believes this logic is flawed considering Virginia's apparent unwillingness to enforce section 18.2–344. *See Doe v. Duling*, 782 F.2d 1202, 1204 (4th Cir.1986) (violators of fornication statute face "only the most theoretical threat of prosecution"). The *Zysk* holding, when combined with Virginia's failure to enforce the fornication statute, essentially immunizes from all possible liability those who consciously or unconsciously spread infectious and incurable disease. Concern over the spread of such disease is undoubtedly a pressing social concern in its own right. Nevertheless, we are bound by the Virginia Supreme Court's interpretation of local law.

**9.** *See Estrada v. Potomac Electric Power Co.*, 488 A.2d 1359, 1361 n. 2 (D.C.1985).

**10.** *Stutsman* applied District of Columbia law in a medical malpractice case where plaintiff lived in Virginia and the injury also arose in Virginia, but defendant was a corporate resident of the District of Columbia.

**11.** *See e.g. Dominion Caisson Corp. v. Clark*, 614 A.2d 529, 531–32 (D.C.1992) (District has strong interest in deterring accidents and protecting rights of employees in the District who live in Virginia); *see also Hitchcock v. United States*, 665 F.2d 354, 360 (D.C.Cir.1985) (District of Columbia law applied when occurrence of the injury outside the District was "fortuitous" and the relationship was centered inside Washington). Although the relationship in this case was also centered in the District, and it is likely that it was

illegal conduct. The District of Columbia has no articulable interest in the claim of a foreign plaintiff seeking relief for injuries arising from illegal sexual conduct occurring outside the borders of the District of Columbia.

This Court remains bound by the determination in *Zysk* that Virginia has a public interest in preventing the illegal conduct at issue. 404 S.E.2d at 722. As a result, Virginia has a greater interest in this encounter in Virginia than does the District of Columbia, the forum jurisdiction. District of Columbia substantive law cannot apply to any cause of action arising from the Virginia sexual encounter. Plaintiff is barred from recovery to the extent her cause of action arises from the Virginia encounter.

### 2. The District Encounter.

The Court believes the converse of the above reasoning is also true. Virginia has a minimal interest in denying recovery to one of its citizens for actions in another jurisdiction if such recovery is available.

> [A] state whose only connection with this litigation is that it was the domicile of a plaintiff or victim has no interest in the imposition of punitive damage liability.

*In re Air Crash Disaster at Washington, D.C.*, 559 F.Supp. 333, 353 (D.D.C.1983). Instead, it is the District of Columbia which must absorb the strain on its health system of treating both the defendant and any other residents he might infect.

### D. Determination of Whether Infection Resulted from the District Encounter.

■ As a final line of defense to defendant's dispositive motion, plaintiff contends that there are material facts in dispute which raise a triable question as to which of the two sexual encounters resulted in infection. We wish we could agree but the evidence is strongly to the contrary. Although the parties' competing experts dispute the normal incubation period for herpes, both agree on the fundamental fact that the period of incubation is at least two to seven days.[12] Plaintiff states that she began experiencing symptoms of the disease "within 48 hours of the sexual encounter with the defendant in Washington, D.C." Declaration of plaintiff, p. 1. Two days after the April 29, 1990, encounter would have been May 1, 1990. This is only five days after the initial sexual encounter in Virginia, and well within the undisputed incubation period of seven days.

Plaintiff also argues that a herpes carrier is contagious during the 24 hour period prior to the appearance of the sores. Because plaintiff did not observe such symptoms during the District encounter, she concludes that defendant could not have been contagious two days earlier in Virginia. Such a theory is a very thin reed on which to rely because it does not recognize the variables inherent in living organisms. Plaintiff's expert noted only that

> [a]n individual with herpes simplex *may* be contagious immediately prior to a visible outbreak ... The contagious period *usually* begins approximately 24 hours prior to the visible outbreak of sores.

Decl. of Dr. Ross, pp. 1–2 (emphasis added). Plaintiff then leaps to the conclusion that this 24 hour period is the only time an individual may be contagious. This conclusion cannot be drawn from Dr. Ross' statement. An undisputed second declaration by Dr. Niles states that a person who is asymptomatic may still spread herpes by "shedding" the virus. *See* Second Declaration, p. 2. The Court concludes that the experts are in general agreement, and that any minor discrepancies do not create more than a metaphysical doubt as to material facts. *See Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. There are no genuine facts in dispute that would preclude summary judgment.

### III. Conclusion

For the foregoing reasons the Court applies Virginia law to the Virginia sexual en-

---

fortuitous that the parties first engaged in intercourse in Virginia, the fact remains that the act was illegal. This implicates policy concerns not at issue in *Hitchcock.*

12. Defendant's expert, Dr. Niles, states that the normal incubation period is two to ten days, while plaintiff's expert, Dr. Ross, contends the period is normally two to seven days. *See* Second Declaration of Dr. Niles, p. 1; *see also* Declaration of Dr. Ross, p. 1.

counter and District of Columbia law to the District encounter. As a result, recovery would be possible only if plaintiff could trace her injury to the District encounter. Because we conclude that no reasonable trier of fact could determine which encounter resulted in infection, we are forced to grant defendant's motion for summary judgment.[13] We regret this unfortunate result which, if plaintiff's allegations are true, shields from liability conduct which is not only despicable, but at the least is highly irresponsible. We hope plaintiff will appeal our determination that we are unable to grant the relief she seeks.

An order in accordance with this opinion has been issued this date.

## ORDER

Upon consideration of defendant's motion for summary judgment, plaintiff's opposition, the reply thereto, and upon consideration of the entire record herein, it is, this 10th day of January, 1994, hereby

ORDERED that defendant's motion for summary judgment is granted; and it is

ORDERED that this case be dismissed with prejudice.

---

**13.** The effective result is that, as a practical matter, defendant is shielded from both civil and criminal liability for the results of his actions. We are, however, bound by the sound rule that a court sitting by diversity should not expand or create causes of action. *Bouchet v. National Urban League, Inc.,* 730 F.2d 799, 807 (D.C.Cir. 1984).